IN the Matter of Philip L. BERGE and Betty Jo Berge, Debtors.

Philip L. BERGE and Betty Jo Berge, Plaintiffs,

v.

Robert J. SWEET, Helen Sweet, and Robert J. Sweet Co., Inc., Defendants.

Adv. No. 82–0246.

United States Bankruptcy Court, W.D. Wisconsin.

Oct. 3, 1983.

William J. Rameker, Murphy, Stolper, Brewster & Desmond, S.C., Madison, Wis., for plaintiffs.

Stuart C. Herro, Madison, Wis., for defendants.

James Sweet, Madison, Wis., for creditors' committee.

## DECISION ON MOTIONS FOR SUMMARY JUDGMENT

ROBERT D. MARTIN, Bankruptcy Judge.

In 1977, chapter 11 debtors, Philip and Betty Jo Berge, signed a contract to purchase 2,777 acres of land in Adams County, Wisconsin, from the defendants, Robert and Helen Sweet ("Sweets"). As a result of debtors' default on the land contract, the Sweets obtained a judgment of strict foreclosure which became absolute hours before the debtors filed their chapter 11 petition. In this adversary proceeding the debtors[1] seek to set aside that foreclosure judgment as a preferential transfer or a fraudulent conveyance to the Sweets. The debtors also seek recovery of farm profits arising after the strict foreclosure, and the rental value of irrigation equipment on the land. Debtors have moved for partial summary judgment on their claims to set aside the foreclosure and to recover farm profits. The

Sweets have also moved for summary judgment or for dismissal of this adversary proceeding. The following facts, drawn from the pleadings and affidavits filed by the parties, are undisputed, unless otherwise noted.

In July of 1980, the Sweets first commenced an action in Adams County to foreclose the debtors' rights under the 1977 land contract. The debtors stipulated to a default in that action. The parties settled the suit in January of 1981, before the redemption period expired, and the judgment was vacated. The settlement agreement provided that the parties would amend the land contract to include a formula for allocation of appreciation if the property were transferred, by which debtors would receive the first $300,000.00 of appreciation, with the remainder to be split evenly. The agreement further called for conveyance of two irrigation systems from the Sweets to debtors.

Debtors defaulted on the amended contract when they missed the payment of principal ($10,000.00) and interest ($51,419.18) due on January 1, 1982. On March 2, 1982, the Sweets filed a second strict foreclosure action in Adams County Circuit Court. The debtors did not appear at a hearing held on April 30, 1982, and a default judgment was entered. There is no contention that debtors lacked notice of the hearing. Based upon the testimony of an expert witness at that hearing, the court determined the fair market value of the property to be $2,555,000.00 for purposes of the appreciation sharing formula. The court gave the debtors 31 days from April 30, 1982, in which to redeem. The property could be redeemed for $1,735,437.12, calculated as follows:

| | |
|---|---|
| Principal | $1,020,000.00 |
| Vendor's share of appreciation | 581,412.74 |
| Interest and default charges | 125,438.74 |
| Attorney's fees and disbursements | 7,135.64 |
| Appraisal fee | 1,450.00 |

1. The unsecured creditors' committee has joined the debtors as a party plaintiff to this adversary proceeding.

The judgment of strict foreclosure was signed on May 24, 1982, *nunc pro tunc* April 30, 1982. Notice of entry of judgment was served on debtors on May 28, 1982. Whether the debtors had actual notice before that is disputed. The debtors failed to redeem by May 31, 1982, so on June 1, the judge for the circuit court of Adams County signed an order making the judgment of strict foreclosure absolute. That order was docketed in the register's office in Adams County at 1:45 p.m. on June 1, 1982. At approximately 4:25 p.m. June 1, the debtors' attorney filed a chapter 11 petition on behalf of the debtors.

The debtors' motion for reconsideration of the Adams County order making the foreclosure judgment final was denied. The validity of the strict foreclosure was on appeal to the Wisconsin Court of Appeals, the debtors contending that they had no notice of the redemption period and that since the last day of the redemption period was May 31, Memorial Day, the redemption period actually ran through June 1, 1982. The court has been informed that the circuit court order was affirmed by the Court of Appeals and that review of that decision was denied by the Wisconsin Supreme Court.

The question before this court is whether the uncontested facts alleged by the debtors support a finding that the judgment of strict foreclosure was a fraudulent conveyance which may be avoided pursuant to 11 U.S.C. § 548. To avoid the transfer as a fraudulent conveyance, debtors [2] rely on 11 U.S.C. § 548(a)(2), which provides in part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

. . . .

(2)(A) received less than a reasonably equivalent value in exchange for such a transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; . . .

Debtors do not contend that there has been any actual fraud in connection with the transaction. Their sole argument is that the foreclosure judgment constituted a transfer to the Sweets for "less than a reasonably equivalent value," while debtors were insolvent. Specifically, debtors cite the discrepancy between the $2.555 million value of the property transferred and the $1.14 million which they claim was the balance due on the land contract. A transfer which comes under 11 U.S.C. § 548(a)(2)(A)–(B)(i) is constructively fraudulent and may be set aside; no *actual* fraud need be found. *See 4 Collier on Bankruptcy,* ¶ 548.03 at 548–42 (15th ed. 1982).

In support of their motion for summary judgment debtors rely on a series of cases which hold that a foreclosure sale which brings a low bid may be set aside as a fraudulent transfer. One of the leading cases in this area is *Durrett v. Washington National Insurance Co.,* 621 F.2d 201 (5th Cir.1980), decided under § 67(d) of the Bankruptcy Act. In that case, the property was sold at a public, non-judicial foreclosure sale, for approximately 58% of its fair market value. *Durrett* is significant for two reasons. First, the court found the foreclosure on and repossession of the realty, not the creation of the lien, to be the relevant "transfer" of debtor's property. *See also Abramson v. Lakewood Bank and Trust Co.,* 647 F.2d 547 (5th Cir.1981). Second, the court held that the transfer was voidable as one for less than fair equivalent value stating:

We have been unable to locate a decision of any district or appellate court dealing only with a transfer of real property as the subject of attack under section 67(d) of the Act, which has approved

---

**2.** Pursuant to 11 U.S.C. § 1107(a) the debtor in possession may exercise the powers of a trustee in avoiding a transfer. *In Re Davidson*

*Lumber Co.,* 19 B.R. 871, 872 (Bkrtcy.S.D.Fla. 1982); *In Re Ateco Equipment, Inc.,* 17 B.R. 230, 236 (Bkrtcy.W.D.Pa.1982).

the transfer for less than 70 percent of the market value of the property.

621 F.2d at 203. This language is the basis for what has come to be known as the *Durrett* 70% rule.[3]

In support of their motion for summary judgment, the Sweets cite *In Re Alsop,* 14 B.R. 982 (Bkrtcy. Alaska 1981) (*aff'd* 22 B.R. 1017 (D.Alaska 1982)) in which the bankruptcy court rejected the *Durrett* analysis. In *Alsop* the holder of a note and deed of trust was the only bidder at a non-judicial foreclosure sale, bidding just over $300,000.00, the amount owed on the note. Contending that the fair market value of the property was $600,000.00, the debtors sought to set aside the foreclosure sale as a fraudulent conveyance under 11 U.S.C. § 548(a)(2).

The *Alsop* court began by noting that under 11 U.S.C. § 548(d)(1) a transfer is deemed made when perfected by the transferee so that no bona fide purchaser from the debtor could acquire an interest superior to the transferee. Under Alaska law, a transfer at foreclosure sale is deemed to relate back to the date the lien was created, and thus no purchaser from debtors could have priority over a foreclosure sale purchaser. Since the deed of trust had been executed and recorded more than one year before bankruptcy, the court concluded that it was not a transfer which could be avoided under 11 U.S.C. § 548(a). The court expressly rejected *Durrett's* transfer analysis, concluding that the de facto right of redemption would only depress the already low bids at foreclosure sales and that creditors would be less willing to lend on a deed of trust because of inability to reach their security. Finally the court noted the debtors had failed to use the pre-foreclosure remedy of filing bankruptcy to invoke the protection of the stay under 11 U.S.C. § 362(a).

Sweets also rely on *In Re Madrid,* 21 B.R. 424 (Bkrtcy.App. 9th Cir.1982) in which the Bankruptcy Appellate Panel for the Ninth Circuit declined to adopt the *Durrett* test. In *Madrid,* the trustee under a deed of trust sold the property at public sale for 64–67% of its market value. The court criticized *Durrett,* noting that the Fifth Circuit's opinion cited no case where a public sale was set aside:

> However valid it may be to hold that less than 70 percent of fair market value is not a fair equivalent for a private transfer to an insider, application of that standard to regularly conducted public sales is questionable.
>
> We decline to follow *Durrett's* 70% fair market value rule for the reason that a regularly conducted sale, open to all bidders and all creditors, is itself a safeguard against the evils of private transfers to relatives and favorites.

*Id.* at 426–27. Thus the court rejected any percentage test. Further, the court emphasized that to set aside a foreclosure sale under Nevada law required more than price inadequacy; there must be some element of fraud or unfairness. The court sought to reconcile the law of foreclosure with the law of fraudulent conveyance:

> Compatible results can be obtained by construing the reasonably equivalent value requirement of Code § 548(a)(2) to mean the same as the consideration received at a non-collusive and regularly conducted foreclosure sale. Thus, in the absence of defects, such foreclosure withstands avoidance as a fraudulent conveyance.

*Id.* at 427. In dissent, Judge Volinn objected to this conclusive presumption, arguing that adequacy of price could only be determined from the facts of each case. He also emphasized that § 548 is a federal statute which: "transcends the dispute between

---

**3.** *See In Re Thompson,* 18 B.R. 67 (Bkrtcy.E.D. Tenn.1982) which involved a non-judicial foreclosure sale of debtors' property for 80.8% of its fair market value. The court, citing *Durrett,* held that the sale could not be avoided under § 548(a)(2), and *In Re Jones,* 20 B.R. 988 (Bkrtcy.E.D.Pa.1982) in which the court set aside a properly conducted sheriff's sale which brought one-third to one-half the market value of the debtors' property. The court cited *Durrett* but declined to adopt its 70% test, stating that reasonably equivalent value must be determined on a case by case basis. *Id.* at 994, n. 23.

this debtor and the secured creditor. It brings into focus the claims of the debtor's other creditors that they have been deprived of recourse to an asset by an improvident sale." *Id.* at 428.

In a recent decision in this line, *In Re Richard,* 26 B.R. 560 (Bkrtcy.R.I.1983), the debtor's home was sold at sheriff's sale to satisfy a judgment. The successful bid was $31.00, less than 1% of either the equity in or fair market value of the property. The court rejected the *Madrid* holding, and adopted dissenting Judge Volinn's approach that equivalent value must be determined on a case-by-case basis.

Perhaps the best reasoned opinion in this series is *In Re Richardson,* 23 B.R. 434 (Bkrtcy.Utah 1982) in which Judge Clark chose to follow *Durrett* rather than *Madrid.*[4] In *Richardson,* the holder of a second deed of trust filed notice of default, and then conducted a public sale. The property was sold for the exact amount of indebtedness. Debtors filed a chapter 7 petition the day after the sale. There was a factual dispute as to the value of, and debtors' equity in, the property so summary judgment was denied, but the court did decide the legal question before it, whether to follow *Durrett* or *Madrid.* The court gave four reasons why it rejected the *Madrid* approach which gives conclusive effect to the price obtained at sale. First, because prices received at judicial sale are usually depressed, they are not the best evidence of value. Second, the court read *Madrid* to allow a good faith exception to 11 U.S.C. § 548, one not found in the statute. Third, *Madrid* gives undue weight to state foreclosure policy, while § 548 is directed toward equitable distribution of property among creditors. Fourth, the court responded to the concern that the *Durrett* rule would radically alter state foreclosure law, pointing out that it is not unusual for transfers which are otherwise valid to be avoided under bankruptcy law.

Although it adopted *Durrett's* reasoning, the *Richardson* court did not adopt any percentage standard, stating:

[R]easonable equivalence will depend on the facts of each case. In some cases, no less than 100 percent of fair market value may be a reasonable price. In all cases, facts such as 'the bargaining position of the parties ... and the marketability of the property transferred' will be relevant. (Citing Cook, "Fraudulent Transfer Liability Under the Bankruptcy Code," 17 Hous.L.Rev. 263, 278 (1980)).

23 B.R. at 448.

The question whether to upset a foreclosure sale under 11 U.S.C. § 548 presents an apparent conflict between state foreclosure law and bankruptcy law. The *Madrid-Durrett* split exists because courts disagree as to how much weight should be accorded the policy of each. A highly instructive analysis of the problem presented by Alden, Gross and Borowity, "Real Property Foreclosure as a Fraudulent Conveyance: Proposals for Solving the Durrett Problem," favors the approach taken in *Durrett* and concludes:

We believe that the policy of section 548 of the Bankruptcy Code requires that any foreclosure sale be treated as a transfer subject to scrutiny at the time of the sale, and that any determination whether that sale obtained reasonably equivalent value should take into account a number of factual considerations. In order to harmonize the distinct policies underlying foreclosure and fraudulent conveyance laws, the courts should consider awarding an irrebuttable presumption of reasonably equivalent value to a third-party purchaser while granting no more than a

---

**4.** Judge Clark also criticized the reasoning in *Alsop,* finding the court's interpretation of § 548(d)(1):

unpersuasive because it improperly fuses two separate transfers: the transfer to the lender of a lien by means of a deed of trust and the subsequent transfer of the debtor's equity to a purchaser by means of a foreclosure sale.

Section 548(d)(1) does not require the joinder of these two transfers when only one is challenged under Section 548(a).

23 B.R. at 445 (footnote omitted). Focusing on the transfer of debtor's equity in the property, the *Richardson* court concluded that the transfer took place when notice of default and sale were given.

rebuttable presumption to the mortgagee which bids in its debt. . . . Other aspects of the foreclosure process, including any judicial participation, public advertising requirement, or period of redemption under state law, should influence any judicial determination whether a particular foreclosure sale may be invalidated—and the mortgaged property redeemed- -under section 548 of the Bankruptcy Code.

38 BUS.LAW. 1624, 1625 (1983).

The present case which involves strict foreclosure obviously differs somewhat from the *Durrett-Madrid* line in that those cases involved the sale of property after foreclosure on a mortgage or deed of trust. In this case no sale has taken place. The Sweets automatically recovered the property after the debtors failed to redeem and the debtors were then released from further obligation to make payments under the land contract. The alleged inadequacy of consideration is the result of appreciation in the land, not a low bid at sale. The important similarity between this case and the *Madrid-Durrett* foreclosure by sale cases is the principle that one creditor should not be preferred over others immediately prior to bankruptcy. Specifically, debtors contend that the Sweets have received a windfall at the expense of other creditors. Thus, the question before the court is not initially whether to follow *Madrid* or *Durrett*, but rather whether either view of 11 U.S.C. § 548 is applicable to this strict foreclosure proceeding.

Only one case has been found which applied 11 U.S.C. § 548 to avoid a strict foreclosure, *In Re Perdido Bay Country Club Estates Inc.*, 23 B.R. 36, 9 B.C.D. 708 (Bkrtcy.S.D.Fla.1982). In that case debtor owned parcels of land in Florida and in Vermont. Both parcels were mortgaged to Equitable. The Florida property was sold at judicial foreclosure sale conducted by a special master. Five months later, the Vermont property was transferred to Equitable by strict foreclosure when "Vermont courts entered consent foreclosure orders vesting title in Equitable without sale." 23 B.R. at 39, 9 B.C.D. at 708. Noting that it was controlled by *Durrett*, the court refused to set aside the Florida transfer, finding that the debtor had received 70% of the fair market value of the property. As a second reason for upholding the Florida sale, the court noted that under Florida law, there was a statutory presumption that the price bid was fair consideration. Because the debtor had not challenged the validity of the sale in state court, it was collaterally estopped from litigating the issue in bankruptcy court.

With respect to the foreclosure on the Vermont property the court did find a fraudulent conveyance. Because the debt had been satisfied by the earlier Florida transfer, the debtor had received nothing in exchange for the strict foreclosure. Additionally, the court noted that there was no presumption that the consideration for a transfer was adequate:

> In a Vermont strict foreclosure, there is no sale. The court's essential discretionary function is to fix the expiration date of the mortgagor's right of redemption. That period typically expires six months after the judgment order of foreclosure. The court may extend or shorten that time. There is no basis for collateral estoppel in this procedure.

23 B.R. at 41 (citations omitted).

Wisconsin's law on strict foreclosure is similar to that in Vermont. In *Westfair Corp. v. Kuelz*, 90 Wis.2d 631, 280 N.W.2d 364 (1979) the Wisconsin Court of Appeals summarized the law of strict foreclosure on a land contract:

> Where a land contract is executed the vendee/purchaser becomes the owner of the land in equity, by equitable conversion, while the vendor/seller retains legal title to secure the balance due on the purchase price. When the purchaser defaults in his payments under the land contract, one of the remedies of the seller is strict foreclosure. This type of foreclosure is an equitable proceeding in which the seller affirms the land contract and offers to complete the terms of the agreement. Only when the purchaser fails to perform the full agreement by paying the

balance due on the land contract within the time set by the court, are the purchaser's rights thereunder foreclosed. The period of redemption rests in the sound discretion of the trial court.

90 Wis.2d at 636, 280 N.W.2d 364 (footnotes omitted) [citing *Kallenbach v. Lake Publications, Inc.,* 30 Wis.2d 647, 142 N.W.2d 212 (1966)].

Three separate points in this procedure are relevant in the present case. First, although Sweets as land contract vendors retained legal title, the debtors were the equitable owners of the Adams County land. *See In Re Foreclosure of Tax Liens,* 106 Wis.2d 244, 250, 316 N.W.2d 362 (1982). Second, in a strict foreclosure proceeding, upon a finding of vendee's default, the court enters a judgment making the entire purchase price under the contract due. *Kallenbach,* 30 Wis.2d at 656, 142 N.W.2d 212. To avoid a forfeiture, the court sets a redemption period in which to perform the contract. *Id.* at 657–58, 142 N.W.2d 212. Thus, the time period in which the debtors could redeem was within the discretion of the Adams County court, but the redemption price was fixed by the land contract. Third, upon debtor's failure to pay the contract price within the redemption period, the absolute title to the land was confirmed in the Sweets, terminating debtor's equitable claim. *See Exchange Corp. of Wisconsin v. Kuntz,* 56 Wis.2d 555, 559, 202 N.W.2d 393 (1972).

This Wisconsin procedure on strict foreclosure is unusual in that it does not recognize an equitable power in the court to order foreclosure on a land contract by judicial sale. *See* Annot. 51 A.L.R.2d 672. The potential unfairness of strict foreclosure to the vendee has been noted in 3 *Am.Law of Property* § 11.75 at 189:

> In normal times the danger of loss of the vendee's profit from increased value of land is not great, in that he will be able to refinance his undertaking before the time of payment limited by the decree has expired; but in times of economic depression, when refinancing is difficult or impossible, a grievous loss in this respect is very possible along with whatever he has paid on the purchase price....

The editors assert that whether strict foreclosure should be allowed is within the discretion of the court:

> 'Strict foreclosure should only be permitted where no substantial payment has been made, or where the present value of the land is less than the amount due vendor, or where ... purchaser having made improvements under the contract, vendor elects to pay for them.' When the situation is not in one of these categories the court should on application and proof, on the basis either of local statute or general equitable principles, require that the foreclosure be by judicial sale.

*Id.* at 190–91 [quoting Pound, *Progress of the Law,* 33 Harv.L.Rev. 813, 834 (1920)]. This is not the Wisconsin rule. No Wisconsin case has been found addressing the foregoing criticism, which seems particularly trenchant in the present case. The issue before this court, however, is not the proper procedure for strict foreclosure in Wisconsin, but whether the exercise of that remedy in this case is a fraudulent conveyance proscribed by 11 U.S.C. § 548.

The first requirement for finding a fraudulent conveyance under 11 U.S.C. § 548 is that there be a transfer of debtor's property. The term "transfer" is defined broadly in 11 U.S.C. § 101(40) as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest." In the present case debtors were equitable owners of the property. When the Adams County strict foreclosure judgment was docketed they lost that equitable interest. This involuntary termination of debtors' equitable ownership by judicial proceeding is a transfer within the meaning of 11 U.S.C. §§ 101(40), 548. The foreclosure sale cases discussed above illustrate that a transfer does not have to be made by the debtor to be a fraudulent conveyance under § 548.

A second requirement of 11 U.S.C. § 548 is that the transfer of debtor's property

take place within a year before filing bankruptcy. Under 11 U.S.C. § 548(d)(1), the transfer is deemed to have been made when perfected so that no purchaser from the debtor could acquire an interest superior to that of the transferee.[5] In this case that occurred on June 1, 1982, when the judgment was made absolute and entered in the Adams County records.

The third requirement of a fraudulent conveyance, that debtors be insolvent at time of transfer or be rendered insolvent by the transfer is satisfied in this case. The debtors' bankruptcy schedules show a balance sheet insolvency if the property is transferred.

The fourth, and perhaps most difficult element of the § 548 analysis in this case is determining whether debtors received less than a reasonably equivalent value for the transfer. A preliminary question is which "values" are to be compared—what did the debtors and the Sweets each receive in this transfer? The general rule in the foreclosure sale cases is to compare the fair market value of the property bid on which the price bid at sale.[6] *See Durrett,* 621 F.2d at 203–204, *Thompson,* 18 B.R. at 70.

In the present case, there is no dispute that the appraised cash value of the land was $2,555,000.00 as of the April 30, 1982 hearing. The parties have assumed that this is the appropriate value to place on what the Sweets received. The parties, however, disagree as to what the debtors received in exchange for this transfer. In the strict foreclosure, there is no bid at sale, only the release from the obligations under the land contract. Sweets contend that

what the debtors received was release from the state court judgment for $1,735,437.12, plus 31 days interest during the redemption period, for a total of $1,750,176.45. This amount represents 68.5% of the $2,555,-000.00 fair market value. Debtors on the other hand contend that the $581,412.74 representing Sweets' share of the appreciation and $17,681.32 representing interest on appreciation must be subtracted from the foreclosure judgment. Debtors reason that if the strict foreclosure is avoided, there has been no transfer which would trigger the appreciation clause of the land contract. Under this theory, debtors contend that they received a release from the Sweets' claim for $1,145,994.19, representing 44.9% of the $2,555,000.00 market value.

The debtors' analysis of the consideration received is dubious. First, it begs the question at hand to reason that "the transfer can be avoided because if we avoid it then we received only $1.14 million." Second, if the purpose of the § 548 avoidance is recovery for the benefit of other creditors, a subsequent sale may be contemplated and the estate will then have to pay Sweets $1.75 million under the appreciation clause. It seems reasonable to conclude that the amount that the Sweets "paid" and the amount the estate "benefitted" was $1.75 million not $1.14 million.

■ Regardless of the weakness in the debtors' calculation of the consideration, the transfer in this case must be examined as to its particular facts. Even if the Sweets computation of consideration is accepted, it does not meet the *Durrett* 70% presumption

---

5. 11 U.S.C. § 548(d)(1) provides:
 For the purposes of this section, a transfer is made when such transfer becomes so far perfected that a bona fide purchaser from the debtor against whom such transfer could have been perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer occurs immediately before the date of the filing of the petition.

6. The calculation of value becomes more complex in cases where a lien will remain following

sale. Courts have taken different approaches. For example, in *In Re Smith,* 21 B.R. 345, 351–52 (Bkrtcy.M.D.Fla.1982) the court disregarded the senior lien and looked only at fair market value. In *In Re Coleman,* 21 B.R. 832, 834 (Bkrtcy.S.D.Tex.1982) the court subtracted the value of a senior lien, as well as the junior lien for which the property was sold. *See also In Re Richard,* 26 B.R. 560, 562 (Bkrtcy.R.I. 1983) comparing these two methods. The best approach is to determine equity by subtracting the value of liens which would remain following sale. *In Re Richardson,* 23 B.R. 434, 441 n. 11 (Bkrtcy.Utah 1982).

of equivalence. More to the point, the consideration represented nothing more than the Sweets' interest as the financing vendor in the appreciated property, it was tendered by operation of law, without advertisement or sale and after an extremely brief period of redemption. The interests of the general creditors and claimants to the bankruptcy estate have been afforded none of the protections of a market place in determining the reasonableness or adequacy of the consideration. The transfer effected a substantial diminution of the debtors' assets on the eve of bankruptcy. Thus, I am compelled to conclude that the strict foreclosure was a transfer for less than equivalent consideration and voidable under 11 U.S.C. § 548.

Having determined that the transfer which was concluded upon the entry of the order making the foreclosure judgment absolute is voidable, a determination must be made as to the right to the income from the property received by the Sweets subsequent to the transfer. Neither the Code nor reported cases provide positive direction as to whether the right to income should be established as of the date of transfer, the date of avoidance or at some other date. In one case of a transfer avoided as a preference under 11 U.S.C. § 547, where the trustee sought an award of interest from the date of each avoidable transfer, the Bankruptcy Court relied upon practice under the prior Act to hold that interest should be awarded from the date of commencement of the adversary proceeding. *Flatau v. Marathon Oil Co.,* 31 B.R. 402, 409 (Bkrtcy. M.D.Ga.1983). *Collier* advises only that in regard to transfers recovered by the trustee (or debtor in possession) under various provisions of the Code including 11 U.S.C. § 548, "[a]s under prior law, the bankruptcy court should exercise its equitable powers to award ... interest and costs when appropriate." 4 *Collier on Bankruptcy,* ¶ 550.02 at 550–6 (15th ed. 1983).

Although the Sweets are obliged to accompany their turnover of the subject property with an accounting, 11 U.S.C. § 542(a),[7] the extent to which the Berge's are entitled to any income from the property during the time it was in the control of the Sweets will depend upon the demonstrated equities of this case. Among the matters properly considered in making this determination is the question of the protection afforded the Sweets' interest in the property. As land contract vendors treated as lien holders of the subject property the Sweets are entitled to adequate protection of their interest. 11 U.S.C. § 361. Because the fair market value of the property, $2,555,000.00, exceeds the value of the Sweets' interest, valued at about $1,750,-000.00, the Sweets are apparently "oversecured." As holders of an oversecured claim, the Sweets are entitled to interest on their claim, and "reasonable fees, costs or charges provided under the agreement under which such claim arose." Section 506(b). However, it has never been determined whether the value of the collateral in excess of the Sweets' allowable secured claim would be sufficient in the absence of periodic payments to provide adequate protection to the Sweets. It is unsafe to presume that even a large "equity cushion" in real estate provides sufficient protection of a lienor's interest without full inquiry into the facts of the case. *See In Re Schaller,* 27 B.R. 959, 961–2 (D.C.W.D.Wis.1983). Rather, it is necessary to determine how much protection remains to the Sweets after the accrued interest, costs of foreclosure, possible depreciation and other risks, both monetary and physical are calculated. Pending such a determination any order for turnover of the income from the property would be inappropriate.

Upon the foregoing which constitutes my findings of fact and conclusions of law in this matter, judgment in favor of the plaintiffs may be entered voiding the transfer of the subject real estate by strict foreclosure. Summary judgment on the issue of the

---

**7.** This is so whether or not the Sweets are considered "custodians" of the property. *Cf.*

11 U.S.C. § 542(a) with § 543(b)(2).

turnover of income from the property shall be and hereby is denied.