In re Judith Lynne MADRID, Debtor.

LAWYERS TITLE INSURANCE CORP., and Donald Turney, Appellants,

v.

Judith Lynn MADRID, Appellee.

BAP No. NV–81–1106–HVE.

Bankruptcy No. 81–00038.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Nov. 18, 1981.

Decided June 22, 1982.

Timothy J. Henderson, Henderson, Nelson & Moschetti, Reno, Nev., for appellants.

Alan R. Smith, Miller & Daar, Reno, Nev., for appellee.

Before HUGHES, VOLINN and ELLIOTT, Bankruptcy Judges.

## OPINION

HUGHES, Bankruptcy Judge:

The question presented by this appeal is whether a non-judicial foreclosure of a deed of trust can be set aside as a fraudulent conveyance under 11 U.S.C. § 548 if the purchase price is significantly less than fair market value. We hold that the consideration received at a non-collusive, regularly conducted public sale satisfies the "reasonably equivalent value" requirement of 11 U.S.C. § 548(a)(2) and reverse the trial court's judgment avoiding the sale, 10 B.R. 795.

### I

Judith Madrid acquired a home near Lake Tahoe in September 1979 for $290,000, giving the seller $125,000 cash and a one-year note secured by a deed of trust for $165,000. The cash was raised with a note to Del Mar Commerce Co. for $142,500, secured by a second deed of trust. The second deed of trust was paid down by $75,300 in June 1980 but no further payments were made and Del Mar requested the trustee under its deed of trust to commence nonjudicial foreclosure proceedings.

The trustee's sale took place on January 9, 1981, at which time $175,000 was due on the first deed of trust and $80,224 on the second. Donald Turney purchased at the sale for the amount of the second deed of trust. He took subject to the first deed of trust, which was in the process of foreclosure.

Madrid filed a Chapter 11 bankruptcy case on January 16, 1981 and, as debtor-in-possession, brought an action against Del Mar, Turney and the trustee under the deed of trust to set aside the trustee's sale of January 9. Two theories were advanced: 1. The sale did not comply with Nevada law; 2. The sale constituted a fraudulent conveyance pursuant to 11 U.S.C. § 548(a)(2)(A). The trial court, holding that the foreclosure sale "was proper and in accordance with Nevada statutes," found for defendants on the first theory. However, it entered judgment rescinding the foreclosure sale and cancelling the trustee's deed to Turney on the fraudulent conveyance theory.

Relying on a recent Fifth Circuit decision, the court found that Turney's bid was 64% to 67% of the property's market value at the time of sale and concluded that it was not reasonably equivalent value. The sale was held to be a voidable fraudulent conveyance. Thereafter, the court gave Turney a lien for the amount of his payment and for his attorneys fees in defending the fraudulent conveyance action. The title insurance company that had insured Turney's title was also given a lien for attorneys fees in defending the fraudulent conveyance action.

Turney and the title company appealed the fraudulent conveyance judgment; Madrid appealed the award of a lien for attorneys fees. We reverse the judgment setting aside the sale; the judgment awarding a lien for fees is thereby rendered moot.

### II

The parties and this panel are aware of only two cases holding that a purchase at a nonjudicial sale under a deed of trust may be set aside as being a fraudulent conveyance. Both cases were decided by the Fifth Circuit Court of Appeals under provisions of the Bankruptcy Act of 1898. They are *Durrett v. Washington Nat. Ins. Co.*, 621 F.2d 201 (5th Cir. 1980) and *Abramson v. Lakewood Bank and Trust Co.*, 647 F.2d 547 (5th Cir. 1981).

In the earlier case, Durrett sought to avoid a foreclosure that took place nine days before he filed Chapter XI. The trial court held the nonjudicial sale was a transfer as that term was used in section 67d of the Act but that the consideration paid at the sale was a "fair equivalent" under section 67d(1)(e)(1) and denied relief. The circuit court reversed.

Section 67(d) of the former Act provided that every "transfer made and every obligation incurred by a debtor within a year" of bankruptcy is fraudulent as to existing creditors "if made or incurred without fair consideration by a debtor who is or will be rendered insolvent, without regard to actual intent . . ." Fair consideration was defined as a "fair equivalent" in a good faith exchange.

The controlling questions as seen by the *Durrett* court were (1) whether the trustee's sale constituted a transfer and (2) whether fair equivalent value was paid.

As to the transfer issue, the court acknowledged that the "actual transfer of title was made by Durrett to Fields, as trustee, via the deed of trust, executed April 7, 1969, to secure an indebtedness . . ." P. 204. The transfer was more than one year before bankruptcy and therefore not vulnerable to attack under section 67d. The court held there was a second and final transfer on the day of the foreclosure sale, and this was within the one-year period.

As to the fair equivalent value issue, the *Durrett* Court noted that the trial court found the fair market value of the property on the date of the foreclosure sale to be $200,000 and that the successful bid was $115,400 or 57.7 per cent of the fair market value. In reversing the trial court's determination that the amount paid was a fair equivalent, the court of appeals held as a matter of law that the amount paid was not a fair equivalent, suggesting that any amount less than 70% of fair market value would not be equivalent value.

The fair equivalent value issue was not reached in *Abramson*, which reversed a summary judgment on the transfer issue.

### III

The case before us is governed by 11 U.S.C. § 548 of the Bankruptcy Code. In its essential respects, it tracks section 67d of the former Bankruptcy Act. Thus, the questions presented for decision are (1) whether the foreclosure sale constituted a transfer and (2) whether "reasonably equivalent value" was paid. 11 U.S.C. § 548(a)(2). We find that "reasonably equivalent value" was paid and need not address the question of whether the sale constituted a transfer.

As stated earlier, the type of value that satisfied the Bankruptcy Act fraudulent conveyance provision was "fair equivalent value." In holding that a foreclosure sale for 57.7 percent of fair market value was not fair equivalent value, the *Durrett* court stated at page 203:

> We have been unable to locate a decision of any district or appellate court dealing only with a transfer of real property as the subject of attack under section 67(d) of the Act, which has approved the transfer for less than 70 percent of the market value of the property.

The only case cited in *Durrett* in support of that statement, *Schafer v. Hammond*, 456 F.2d 15 (10th Cir. 1972), was a voluntary transfer of real property by the debtor corporation to the mother of the principal stockholder of the debtor corporation. In view of our inability to find any cases other than *Durrett* and *Abramson* where a nonjudicial foreclosure sale was set aside on fraudulent conveyance grounds, we assume that the cases upon which *Durrett* fashioned the 70% fair market value rule were all voluntary, private transfers such as in *Schafer*.

However valid it may be to hold that less than 70 percent of fair market value is not a fair equivalent for a private transfer to an insider, application of that standard to regularly conducted public sales is questionable.

We decline to follow *Durrett*'s 70% fair market value rule for the reason that a regularly conducted sale, open to all bidders

and all creditors, is itself a safeguard against the evils of private transfers to relatives and favorites.

The question remains whether the price obtained at a nonjudicial foreclosure sale is itself "reasonably equivalent value" of the property transferred.

## IV

If we consider the question of price adequacy in the context of foreclosure law we find, not surprisingly, that mere inadequacy will not upset a foreclosure sale. *Golden v. Tomiyasu*, 79 Nev. 503, 387 P.2d 989 (1963). "[T]here must be in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price." *Oller v. Sonoma County Land Title Company*, 137 Cal.App.2d 633, 290 P.2d 880, which is identified as the Nevada rule. *Golden v. Tomiyasu*, supra, 387 P.2d at 994–5. The trial court's construction of § 548 would radically alter these rules. Any foreclosure sale which failed to bring 70% of the property's market value could be set aside by a bankruptcy trustee or a debtor-in-possession for a period of one year.

The law of foreclosure should be harmonized with the law of fraudulent conveyances. Compatible results can be obtained by construing the reasonably equivalent value requirement of Code § 548(a)(2) to mean the same as the consideration received at a non-collusive and regularly conducted foreclosure sale. Thus, in the absence of defects, such foreclosure withstands avoidance as a fraudulent conveyance.

Reversed.

VOLINN, Bankruptcy Judge, dissenting.

As stated by the majority, the issue is whether or not a transfer of the debtor's property, in the course of a deed of trust foreclosure sale, is the kind of transfer contemplated by 11 U.S.C. § 548, the fraudulent conveyance section of the Bankruptcy Code. The majority holds that such a transfer may be a fraudulent transfer and that the reasonably equivalent value test is satisfied if the property is sold at a regularly conducted public sale and there is no collusion or irregularity.

Two decisions of the Fifth Circuit Court of Appeals which involved similar facts and which held that the provisions of § 67 of the Bankruptcy Act, the predecessor of § 548, encompasses foreclosure sales, have aroused concerned comment. *Durrett v. Washington Nat. Ins. Co.*, 621 F.2d 201 (5th Cir. 1980); *Abramsom v. Lakewood Bank & Trust Co.*, 647 F.2d 547 (5th Cir. 1981). These cases are viewed as a new departure with a great potential for destabilizing long-established practice in the field of mortgage and deed of trust foreclosure.[1] See *Abramsom v. Lakewood Bank & Trust Co.*, at 549–50 (Clark, J., dissenting); *In re Alsop*, 14 B.R. 982, (Bktcy.Alaska, 1981). Conceptually, the logic of *Durrett* is sound. While there may be some initial confusion as to whether the original transfer, by way of security, or the subsequent transfer at a forced sale is the transfer which should be considered under § 548, it is clear that it is the second transfer which actually divested the debtor of all interest in the property. To the extent that there may be a question as to whether or not the transfer was forced or voluntary, the Code definition of "transfer" includes involuntary transfer. 11 U.S.C. § 101(40). The scope of this definition is at least as broad as its Act predecessor, 11 U.S.C. § 1(30) which was in effect when *Durrett* was decided. See, H.R. Rep. No. 595, 95th Cong., 1st Sess. (1977), p. 314, U.S.Code Cong. & Admin.News 1978, p. 5787. Thus, § 548, which states that a

---

1. This is a policy issue, essentially. It may be that the problem should be dealt with legislatively. Insofar as it should be a matter of judicial concern, it is obvious that those who purchase at foreclosure sales do so to make a profit. From a certain point of view, the issue, insofar as it involves adequacy of price, gives consideration as to whether creditors of the debtor have suffered a loss by virtue of the purchaser getting too great a bargain. If this is found to be so, the purchaser loses what the court found to be an excessive profit. He is still entitled at least to a lien for what he invested. 11 U.S.C. § 548(c).

"trustee may avoid any transfer of an interest of the debtor" affects foreclosure sales which, albeit consented to, are in a real sense forced or involuntary.

The majority evidences great concern with an arbitrary figure as to what may be reasonably equivalent value. It states that *Durrett* has in effect imposed an upset price of 70% in deed of trust or mortgage foreclosure sales. *Durrett* need not be read as categorically setting such a figure. The case held that a sale for 57% of the value was not for a reasonable equivalent value. In any event, I believe that the concept of "reasonably equivalent value" as a test set for 11 U.S.C. § 548(a)(2) requires that the trial court examine the consideration received in such a sale in the factual context of a particular case.[2]

One cannot disregard the fact that a foreclosure sale is a forced sale and that the debtor contracted that such sale could occur in the event of default. Thus, there is a reasonable prospect that a sale under the circumstances of foreclosure could result in a price which would be less than one made under ideal circumstances involving a seller who does not have to sell and a buyer who does not have to buy. The reasonable value test of § 548, as stated, is to be applied in particular factual contexts. It is thus possible, considering all the circumstances involved, that the consideration received from a forced sale pursuant to statute may be afforded a presumption that it is of reasonably equivalent value.

The majority, however, endows the consideration received at a non-collusive regularly conducted non-judicial foreclosure sale, with a conclusive or irrebuttable presumption of reasonableness. Functionally, the only way to question a fraudulent transfer under § 548 is to examine the adequacy of the consideration. If one is precluded from testing the transaction on the basis of the fraudulent transfer criterion and is deflected to criteria relating to questioning the validity of a deed of trust foreclosure, that is, collusion or irregular conduct, then the majority's logic in applying § 548 as a factor in its decision is illusory.

The Bankruptcy Code is a Federal Statute. Section 548 states a standard with respect to reviewing consideration in the event of a transfer of the debtor's property. Section 548 transcends the dispute between this debtor and the secured creditor. It brings into focus the claims of the debtor's other creditors that they have been deprived of recourse to an asset by an improvident sale. The majority would hold that despite widespread differences in law and practices relating to foreclosure, no bankruptcy court may entertain the factual issue of whether, under § 548, the consideration paid was the reasonably equivalent value. By concluding that a regularly conducted sale in the absence of collusion satisfies the "reasonably equivalent value" test, the majority has excised vital language from § 548 in order to create an exception to the statute where a forced sale of the debtor's property is involved. There is nothing in the Code nor its legislative history to suggest that such an exception was intended.

In conclusion, I would hold that the price paid at a regularly conducted foreclosure sale should be given, at best, a strong presumption of adequacy. It should be remembered that the burden of proof in any event, is on the plaintiff to show that the consideration paid was inadequate. In this case the record shows that the Bankruptcy Judge heard the facts and gave the matter a good deal of thought.[3] He concluded that

---

**2.** The primary goal of the seller at a foreclosure sale is satisfaction of a debt. This goal is different than that of a seller trying for the highest possible price. Given this difference in motivation, and the same market circumstances, results could differ substantially. It is this difference which is the area of inquiry encompassed by the term "reasonably equivalent value".

**3.** In his Opinion and Decision the trial court, after some analysis concluded:

"Defendant Turney paid 64% to 67% of the market value of a very unique piece of residential property. At the time of the sale he was prepared to bid approximately $6,000 more. Immediately after the sale he insured the property for $325,000 as fire value . . . a purchase price of $256,000 in this case is not

a price of about 67% of the fair market value was not a reasonably equivalent value. This is a finding of fact which may be overturned only if it is clearly erroneous. Bankr.Rule 810. I am satisfied that his conclusion was reasonable and supported by the record. I would affirm.

the reasonably equivalent value of a market

appraisal of $380,000 to 400,000.''