In re Donald Eugene
BUNDLES, Debtor.

Donald Eugene BUNDLES, Plaintiff,

v.

William J. BAKER, Indiana National
Bank and James C. Wells,
Defendants.

Bankruptcy No. IP85–4206WP.
Adv. No. 85–0578.

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

June 17, 1986.

Richard Shevitz, Hopper & Opperman, Indianapolis, Ind., for defendant William J. Baker.

Laura L. Larson, Robert G. Grant, Ecklund, Frutkin & Grant, Indianapolis, Ind., for defendant Indiana Nat. Bank.

Robert A. Brothers, Christ, Hadler & Brothers, Indianapolis, Ind., trustee.

Dennis Jackey, Judith Seubert, UAW Legal Services Plan, Indianapolis, Ind., for debtor.

Jan J. Kinzie, City Legal Counsel, Indianapolis, Ind., for defendant James C. Wells.

### ENTRY ON DEBTOR'S COMPLAINT TO SET ASIDE AND VACATE A FRAUDULENT CONVEYANCE

ROBERT L. BAYT, Bankruptcy Judge.

*1. Factual Statement*

On September 25, 1985, Debtor filed his bankruptcy petition under Chapter 13 of Title 11 of the United States Code. On November 14, 1985, Debtor filed the instant complaint to set aside and vacate a fraudulent conveyance ("Complaint"), praying that this Court exercise its avoiding powers under 11 U.S.C. Section 548(a)(2) to a foreclosure sale of Debtor's residence.

Counsel for Debtor has presented this Court with a sympathetic "test case" of first impression in this district. Debtor owned and resided in the subject property for approximately 21 years before the home mortgage was foreclosed and sold at sheriff's sale.

All parties have stipulated to the facts and this adversary proceeding is ripe for the legal decision of this Court. The text of the parties' February 18, 1986, stipulation as to facts follows:

1. Donald Eugene Bundles, Plaintiff and Debtor, filed a petition under Chapter 13 of the United States Bankruptcy Code on September 25, 1985. He has maintained 106 South Webster Avenue, Indianapolis, Indiana, as his residence since 1964.

2. Indiana National Bank ("INB"), a defendant herein, was the assignee of the mortgage on Debtor's residence located at 106 South Webster Avenue, Indianapolis, Indiana.

3. James C. Wells, Sheriff ("Sheriff"), a defendant herein, is the Sheriff of Marion County.

4. William J. Baker ("Baker"), a defendant herein, is the present title holder of the debtor's residence.

5. Sometime in 1984 and 1985, due to various financial and health problems, Debtor was unable to make his mortgage payments, and INB commenced an action in the Marion County Superior Court, Division 6, Cause No. S685–0241, on March 4, 1985, seeking foreclosure of the above-mentioned property.

6. INB obtained a default judgment, and judgment was entered against Debtor on July 10, 1985, in the amount of Four Thousand Six Hundred Ninety-Six and 46/100 Dollars ($4,696.46) plus interest and costs. The IRS lien against the

real estate was reduced to a personal judgment in the amount of Two Thousand Six Hundred Sixty-Six Dollars ($2,666.00) plus interest.

7. A sheriff's sale of Debtor's residence was scheduled and held on September 11, 1985, after proper notice and in compliance with Indiana law.

8. Debtor was insolvent on September 11, 1985.

9. The price bid and paid by Baker to obtain Debtor's residence was Five Thousand Sixty-Six and 80/100 Dollars ($5,066.80).

10. The value of the property on November 14, 1985, was Fifteen Thousand Five Hundred Dollars ($15,500.00).

11. On the 12th day of September, 1985, Sheriff executed a deed to Baker, conveying Debtor's residence to him. Said deed was recorded on September 24, 1985, in the Office of the Marion County Recorder.

The sole issue before this Court is whether a regularly conducted, non-collusive foreclosure sale is subject to avoidance under 11 U.S.C. Section 548(a)(2).

2. *Analysis*

The relevant statutes read:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

\* \* \* \* \* \*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

\* \* \* \* \* \*

(d)(1) For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

11 U.S.C. § 548(a)(2), (d)(1).

(48) "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption;

11 U.S.C. § 101(48).

According to the express language of the above statutes, the foreclosure sale at bar may be avoided if there has been (1) a "transfer" of an interest of the debtor (2) made while Debtor was insolvent or which rendered Debtor insolvent (3) for less than "reasonably equivalent value" (4) which occurred within one year of the filing of the bankruptcy petition. *See, e.g., In re Verna*, 58 B.R. 246, 248 (Bkrtcy.C.D.Cal.1986).

The Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAA") created two material changes from prior law. First, the phrase "foreclosure of the debtor's equity of redemption" was added to the statutory definition of "transfer". Second, Section 548(a)(2) avoidance powers were expressly granted to "involuntary" transfers.

Debtor's insolvency at the time of the sheriff's sale has been stipulated. The Complaint will therefore succeed if the Court concludes that (1) the sale in question constituted a "transfer" within one year of the petition's filing, and (2) the sale price constituted less than "reasonably equivalent value" for the subject realty.

A. *Survey of the Circuits*

The instant question was first addressed in *Durrett v. Washington Nat. Ins. Co.*, 621 F.2d 201 (5th Cir.1980). Applying the 1898 Bankruptcy Act, Section 67(d), 11

U.S.C. § 107(d),[1] the Fifth Circuit held a sale price of $115,400.00 for property valued at $200,000.00 "... was not a 'fair equivalent' for the property. Under such circumstances, it is our duty to declare the transfer voidable under section 67(d). * *" (citations omitted) 621 F.2d at 204. The sale in *Durrett* was a result of the debtor's default on a note secured by a deed of trust which contained a provision for public sale in event of default. *Durrett* also concluded that the 1898 Bankruptcy Act's definition of "transfer", 11 U.S.C. § 1(30), included the sale under the deed of trust. *Id.*

*Durrett* was followed in *Abramson v. Lakewood Bank and Trust Co.*, 647 F.2d 547 (5th Cir.1981), *cert. denied* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982). However, a vigorous dissent by Clark, J., stated, in pertinent part:

> By our decision here and in *Durrett* we cast a cloud upon mortgages and trust deeds. Foreclosure within twelve months before a filing creates a sale voidable by a trustee in bankruptcy if the public sale did not bring a 'fair consideration.' It is generally known that such sales do not bring the best price....
>
> The cloud created over mortgages and trust deeds by making foreclosure sales subject to being voided by a bankruptcy trustee will naturally inhibit a purchaser other than the mortgagee from buying at foreclosure. This tends to depress further the prices at foreclosure sales and thus increase the potential size of the deficiency....
>
> It is interesting to me that *Durrett* is the first case treating this problem—af-

ter 90 years of bankruptcy law and mortgages of a time greater than the memory of man....

647 F.2d at 549.

The Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") and the Ninth Circuit Court of Appeals disagreed on the analysis underlying their respective decisions that a foreclosure sale is not subject to avoidance under Section 548(a)(2). *In re Madrid*, 21 B.R. 424 (Bkrtcy.App. 9th Cir. 1982), *aff'd on other grounds*, 725 F.2d 1197 (9th Cir.1984), *cert. denied* — U.S. ——, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984), like *Durrett*, involved a default upon a deed of trust where the purchaser at the trustee's sale paid 64% to 67% of the property's fair market value. 21 B.R. at 425.

The BAP declined to follow *Durrett* "... for the reason that a regularly conducted sale, open to all bidders and all creditors, is itself a safeguard against the evils of private transfers to relatives and favorites." 21 B.R. at 424–425. The BAP therefore concluded that

> [t]he law of foreclosure should be harmonized with the law of fraudulent conveyances. Compatible results can be obtained by construing the reasonably equivalent value requirement of Code § 548(a)(2) to mean the same as the consideration received at a non-collusive and regularly conducted foreclosure sale. Thus, in the absence of defects, such foreclosure withstands avoidance as a fraudulent conveyance.

21 B.R. at 427.

While agreeing upon the ultimate result reached by the BAP, the Ninth Circuit did

---

1. 11 U.S.C. Section 107(d)(1898) stated, in pertinent part:

(2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition ... is fraudulent (a) as to creditors existing at the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent; or (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, if made or incurred without fair consideration by a debtor who is engaged

or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent; or (c) as to then existing and future creditors, if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature; or (d) as to then existing and future creditors, if made or incurred with actual intent as distinguished from intent presumed by law, to hinder, delay, or defraud either existing or future creditors.

11 U.S.C. § 107(d)(2).

... not base our holding on the question of reasonably equivalent value. We hold that the sale must be upheld because the transfer of the home occurred at the time of perfection of the trust deed, not upon foreclosure.

725 F.2d at 1198. Creating a "one transfer" rule and applying Section 548(d)(1) as the relevant definitional section regarding "transfer", the Ninth Circuit concluded that the Section 548(a)(2) transfer occurred when the secured creditor's security interest in the debtor's residence was initially perfected. *Id.* Such perfection obviously occurred long before one year prior to the bankruptcy filing. The Ninth Circuit decided that, upon perfection, the secured creditor obtained a superior interest "... to the interest in such property of the transferee [purchaser].... " 11 U.S.C. § 548(d)(1), *supra*.

Farris, J., concurred in the *Madrid* Ninth Circuit opinion but stated:

> [t]he flaw in [the majority's approach] is its assumption that there can be only one transfer. The debtor who gives a creditor a security interest in his property ... often retains an interest in the property, such as possession, that can be transferred at a later date. ... Section 548(d)(1) does not support the "one transfer" rule....

725 F.2d at 1204.

In *In re Hulm*, 738 F.2d 323 (8th Cir. 1984), *cert. denied* —— U.S. ——, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984), the Eighth Circuit was faced with a state law foreclosure procedure analogous to that presently before this Court. The property in question had been conveyed pursuant to a judicial foreclosure sale and subsequent sheriff's deed. The debtor remained the legal owner of the property until foreclosure and continued in possession of the reality until expiration of the state redemption period. The issuance of the sheriff's deed terminated the debtor's property interest. 738 F.2d at 326.

*Hulm's* determination of the time of transfer differs from the *Madrid* Ninth Circuit majority analysis, *supra*. *Hulm*

concluded that Section 548(d)(1) "... only determines when a transfer is deemed to have occurred, not whether a certain occurrence is a transfer of an interest of the debtor in property." 738 F.2d at 327. Therefore, "... separate and distinct interests in property may be transferred at different times. It is our view that foreclosure of the mortgage under the North Dakota statutory scheme effected a transfer...." *Id.*

Regarding the question of "reasonably equivalent value," *Hulm* adopted a similar position to that of *Durrett, supra*.

> [T]he question of whether a sale price provided a reasonably equivalent value cannot be answered without an evidentiary hearing....
>
> We are aware of expressed concern that the result we have reached will affect the strategies of purchasers at judicial foreclosure sales. * * * The Bankruptcy Code provisions are clear, however, and direct the result we have reached. Hence, policy considerations cannot affect the outcome of this case, but must be addressed, if at all, by Congress.

*Id.*

Most recently, the Sixth Circuit in *dicta* discussed the question at bar in *Matter of Winshall Settlor's Trust*, 758 F.2d 1136 (6th Cir.1985). *Winshall* directed "heavy criticism" at the *Durrett* conclusions that the foreclosure sale constituted a transfer and that the sale price did not constitute reasonable equivalence. Regarding the latter *Durrett* conclusion regarding "reasonably equivalent value," *Winshall* adopted and cited the reasoning of the BAP in *Madrid, supra*, and also quoted the dissent of Judge Clark in *Abramson, supra*. 758 F.2d at 1139–1140.

The Seventh Circuit has not yet been faced with the precise question presently before this Court. Research has revealed two bankruptcy decisions within this Circuit addressing the possible avoidance of foreclosure sales. *Compare Matter of Berge*, 33 B.R. 642, 649–650 (Bkrtcy.W.D. Wis.1983) (following *Durrett*) *with In re*

*Ristich,* 57 B.R. 568, 577 (Bkrtcy.N.D.Ill. 1986)(creating an irrebutable presumption that the foreclosure sale was for reasonably equivalent value where the purchaser at the sale is an unrelated third party).

The analysis of the BAP in *Madrid, supra,* and of Judge Clark's dissent in *Abramson, supra,* has been echoed by the Seventh Circuit in a similar context. *Matter of Tynan,* 773 F.2d 177 (7th Cir.1985), involved an attempt by debtors to extend the Illinois redemption period pursuant to 11 U.S.C. Section 108. In holding that Section 108 extends the redemption period for sixty days from the commencement of bankruptcy proceedings, the Seventh Circuit rejected the debtors' argument that the state redemption period should be tolled until the completion of a Chapter 13 plan.

> If we were to adopt [debtor's] position, we would cloud every title secured through a foreclosure sale due to the possible filing of a voluntary petition in bankruptcy during the statutory redemption period.

773 F.2d at 179.

### B. *"Transfer"*

■ This Court does not dispute the conclusion that, under Section 548(d)(1), a transfer may occur upon the initial perfection of the mortgage in question. *See, e.g., Madrid, supra,* 725 F.2d at 1198. In most cases, the initial mortgage perfection will occur prior to one year before the bankruptcy filing.

■ However, as reasoned by *Hulm, supra,* and by Judge Farris' concurrence in *Madrid, supra,* there is no basis for the argument that the *only* applicable transfer occurs at the time of perfection of the underlying mortgage. All of the relevant Circuit Court decisions, *supra,* were promulgated prior to the effective date of the BAA. The BAA reinforces rejection of the "one transfer" rule by the inclusion in the definition of "transfer" of "foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(48), *supra.* Further, the non-exclusive nature of Section 548(d)(1) is evidenced by the statute's own terms: "[f]or the purposes of this section, *a* transfer is

made...." (emphasis supplied) 11 U.S.C. § 548(d)(1), *supra.* This Court therefore holds that an act meeting the requirements of Section 101(48) is a "transfer" for purposes of Section 548(a)(2).

■ Under Indiana law, the debtor may redeem realty "[a]t any time prior to the [sheriff's] sale." I.C. 32–8–16–3. When the mortgaged premises are, as here, "... occupied as a dwelling by the record owner of the fee simple title ...," the debtor is permitted to retain possession of the realty until the sheriff's sale. I.C. 32–8–16–7. Therefore, pursuant to Section 101(48), at least two property interests of the debtor are transferred by the foreclosure sale, the debtor's right to possession of the realty, and "foreclosure of the debtor's equity of redemption."

### C. *BAA Legislative History, History and Policy Considerations, and "Reasonably Equivalent Value"*

Facially, the BAA appears to have contemplated the issue at bar and approved avoidance. The addition of "foreclosure of the debtor's equity of redemption" to the definition of "transfer" and the inclusion of "involuntary" transfers within Section 548(a)(2) avoidance power seems to manifest a legislative intent to allow avoidance of regularly conducted, non-collusive foreclosure sales.

A review of the relevant BAA legislative history proves that Congress indeed contemplated avoidance of foreclosure sales; however, such review demonstrates the Congressional intent to preserve rather than avoid regularly conducted, non-collusive foreclosure sales.

> Mr. DeCONCINI. Apparently there may have been some misunderstanding regarding the effect of certain technical amendments made by the recently enacted bankruptcy legislation ... which amended the definition of transfer ... to add the phrase "and foreclosure of the debtor's equity of redemption," ... [and amended] section 548(a) ... to add the phrase "voluntarily or involuntary." A question has arisen whether these amendments somehow support the posi-

tion taken ... in *Durrett*.... My understanding is that these provisions were not intended to have any effect one way or the other on the so called Durrett issue. Is my understanding correct?

Mr. DOLE. The Senator's understanding is indeed correct. ... In deference to Senator METZENBAUM's position, Senator THURMOND agreed to delete from his amendment all provisions dealing with the Durrett issue.... Consequently, no provision of the bankruptcy bill as passed by this body was intended to intimate any view one way or the other regarding the correctness of the position taken ... in the Durrett case, or regarding the correctness of the position taken by ... Madrid, which reached a contrary result.

... [T]he amendment should not be construed to in any way codify Durrett or throw a cloud over noncollusive foreclosure sales.

... Finally, neither of the [amendments] purport to deal with the question of whether a noncollusive, regularly conducted foreclosure sale should be deemed to be for a reasonably equivalent value.

Mr. DeCONCINI. Then I am correct in concluding that parties in bankruptcy proceedings who seek avoidance of prepetition foreclosure sales would find no support for their arguments in these amendments?

Mr. DOLE. The Senator's conclusion is correct.

130 Cong.Rec. S.13771–S.13772 (No. 131, Pt. II, October 5, 1984).

This Court is faced with a situation where the plain language of the relevant statutes conflicts with the obvious intent of the drafters. Clearly, Congress did not intend Section 548(a)(2) avoidance to skew the states' law of foreclosure.

There is no suggestion of actual fraud in most regularly conducted, non-collusive foreclosure sales; however, as Judge Clark has stated, *supra,* it is well known that such sales result in a low purchase price. Congress has recognized the disparity between the value of a "going concern" and the price realized at a forced sale.

Neither is it expected that the courts will construe the term value to mean, in every case, forced sale liquidation value or full going concern value. There is wide latitude between those two extremes.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess., *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6295–6296.

The history of Section 548 dates from the 1570 Statute of 13 Elizabeth (*see* H.R.Rep. 95–595, 95th Cong., 1st Sess., *reprinted in* U.S.Code Cong. & Admin.News 5787, 6331), which avoided

... covinous and fraudulent ... conveyances, ... judgments and executions ... devised and contrived of malice, fraud, ... collusion or guile, to the end purpose and intent, to delay, hinder or defraud....

13 Eliz. c.5 (1570), *quoted in* Zinman, Houle & Weiss, "Fraudulent Transfers According to Alden, Gross and Borowitz: A Tale of Two Circuits," 39 *The Business Lawyer* 977, 988n.59 (1984). However, the actual fraud requirement of 13 Elizabeth presented great proof problems and consequently courts constructed "badges of fraud" to avoid suspect transfers. Zinman, Houle & Weiss, *supra,* at 989–991. In turn, inconsistent application of these "badges" resulted in disparate results. *See* UFCA, "Prefatory Note," 7A U.L.A. 427, 428 (1985).

The purpose of the constructive fraud provisions in the Uniform Fraudulent Conveyances Act ("UFCA"), the 1898 Bankruptcy Act, Section 67(d), 11 U.S.C. Section 107(d), *supra,* and Section 548(a)(2) is to reduce "... the role of the debtor's subjective intent and [expand] the role of objective factors, ... [in order] to eliminate the tendency of course to invoke extrastatutory presumptions.* " (footnote omitted) Note, "Good Faith and Fraudulent Conveyances," 97 Harv.L.Rev. 495, 497 (1983). *See also* 7A U.L.A., *supra,* at 428. However, the empirical evidence suggests that both the UFCA and Section 548(a)(2) were designed to produce "... the same substantive results as the Statute of 13 Elizabeth.* " (footnote omitted) Zinman, Houle & Weiss, *supra,* at 991.

This Court therefore holds that any avoiding effect accorded a low purchase price by Section 548(a)(2)(A) is misplaced and overbroad with respect to regularly conducted, non-collusive foreclosure sales. Ironically, in order to escape avoidance under Section 548(a)(2), the Court must invoke what the Code attempts to displace, i.e., extra-statutory presumptions.

■ "Reasonably equivalent value" is the statutory vehicle which this Court implements to achieve the instant decision. Given a regularly conducted, non-collusive foreclosure sale and resulting recorded sheriff's deed, this Court shall conclusively presume that the sale price constitutes "reasonably equivalent value" under 11 U.S.C. Section 548(a)(2)(A). *Accord, Ristich, supra,* 57 B.R. at 577–578; *Verna, supra,* 58 B.R. at 252.

Pursuant to Rule 7052 and Federal Rule of Civil Procedure 52, this Entry constitutes all applicable findings of fact and conclusions of law.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that final judgment on Debtor's Complaint be, and hereby is, entered in favor of defendants.