### In re Donald Eugene BUNDLES, Appellant,

v.

### William J. BAKER, Indiana National Bank, and James C. Wells, Appellees.

### In re Donald Eugene BUNDLES, Debtor.

### Donald Eugene BUNDLES, Plaintiff,

v.

### William J. BAKER, Indiana National Bank, and James Wells, Defendants.

No. IP 86–890–C.
Bankruptcy No. IP 85–4206 WP.
Adv. No. 85–0578.

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 12, 1987.

---

**204**

Dennis A. Jackey, Judith E. Seubert, UAW Legal Services Plan, for debtor.

Richard Shevits, Hopper and Opperman, for William Baker.

Laura L. Larson, Robert G. Grant, Ecklund, Frutkin and Grant, Indianapolis, Indiana for Indiana Nat. Bank.

Jan J. Kinzie, City Legal Counsel, Indianapolis, Ind. for James C. Wells.

Robert A. Brothers, Indianapolis, Ind., trustee.

## DECISION

BARKER, District Judge.

This matter is before the court on appeal from the June 17, 1986 entry of the Honorable Robert L. Bayt, Judge, United States Bankruptcy Court for the Southern District of Indiana, denying the debtor's "Complaint to Set Aside and Vacate a Fraudulent Conveyance" pursuant to 11 U.S.C. § 548(a)(2)(A) (1982), 61 B.R. 929. On September 29, 1986, the debtor-appellant, Donald Eugene Bundles ("Bundles"), filed his brief in support of reversal of the bankruptcy court's decision. William J. Baker ("Baker") filed an opposing brief on November 10, 1986. On November 14, 1986,

James C. Wells adopted Baker's brief in opposition as his own. On December 3, 1986, Indiana National Bank ("INB") filed its opposing brief. Finally, on January 20, 1987, Bundles filed a reply brief.

The court, being duly advised in the premises, now AFFIRMS the bankruptcy court's decision. The reasons for the court's ruling are set forth in the following memorandum.

### Memorandum

#### I. Background

The parties stipulated the following facts: Don Bundles has lived at 106 South Webster Avenue, Indianapolis, Indiana, since 1964. Sometime in 1984 or 1985, Bundles became unable to make his mortgage payments to INB because of various financial and health problems. On March 4, 1985, INB commenced an action in Marion County Superior Court, Division 6, Cause No. S685–0241, seeking foreclosure of the Webster Avenue property. On July 10, 1985, INB obtained a default judgment against Bundles in the amount of $4,696.46 plus interest and costs. In addition, the IRS lien against the real estate was converted to a personal judgment against Bundles in the amount of $2,666.00 plus interest.

On September 11, 1985, after proper notice under Indiana law, the Webster Avenue property was sold at a sheriff's sale to William J. Baker for $5,066.80. At the time of the sale, Bundles was insolvent.

On September 12, 1985, James C. Wells, the Sheriff of Marion County, executed a deed to the Webster Avenue property to Baker. The deed was recorded on September 24, 1985, in the Marion County Recorder's office.

On September 25, 1985, Bundles filed a petition for relief under chapter 13 of the Bankruptcy Code. On November 14, 1985, Bundles filed a complaint to set aside the foreclosure sale of his residence as a fraudulent conveyance under 11 U.S.C. § 548(a)(2) (1982). The value of the Webster Avenue property on November 14, 1985, was $15,500.00. On June 17, 1986,

the bankruptcy court entered its judgment on Bundles' complaint, refusing to set the foreclosure sale aside.

It is this judgment from which Bundles appeals.

## II. *Discussion*

Section 548(a)(2) of the Bankruptcy Code provides:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation....

11 U.S.C. § 548(a)(2) (1982). Thus, to establish a fraudulent transfer, five elements must be proven:

1) that the debtor had an interest in property,

2) that the debtor's interest was voluntarily or involuntarily transferred,

3) that the transfer occurred within one year of the date of the filing of the petition,

4) that the debtor received less than a reasonably equivalent value for his interest, and

5) that the debtor was insolvent at the time of transfer, or became insolvent as a result thereof.

The bankruptcy court concluded that elements 1, 2, 3, and 5 were all satisfied, but held that the debtor had not proven that he had received less than a reasonably equivalent value for his interest in the Webster Avenue property. The bankruptcy court wrote: "Given a regularly conducted, noncollusive foreclosure sale and resulting recorded sheriff's deed, this court shall conclusively presume that the sale price constitutes 'reasonably equivalent value' under

11 U.S.C. section 548(a)(2)(A)." June 17, 1986 Entry, at p. 936.

On appeal, Bundles argues that he did receive less than a reasonably equivalent value for his interest in the Webster Avenue property at the foreclosure sale and that the bankruptcy court's conclusive presumption to the contrary was erroneous. The defendants, of course, disagree.

The first step in deciding what a term within a statute means is to look to the statute, itself, for a definition of the term. Unfortunately, the Bankruptcy Code provides no definition of the term "reasonably equivalent value." The second step, then, is to examine the legislative history of the statutory section encompassing the term and of the statute generally. The only guidance available in that respect is from a colloquy between Senators DeConcini and Dole, set out in the Congressional Record following the adoption of the 1984 amendments to the Bankruptcy Code. That colloquy occurred as follows:

Mr. DeCONCINI. Apparently there may have been some misunderstanding regarding the effect of certain technical amendments made by the recently enacted bankruptcy legislation ... which amended the definition of transfer ... to add the phrase "and foreclosure of the debtor's equity of redemption," ... [and amended] section 548(a) ... to add the phrase "voluntarily or involuntarily." ... [N]either of the [amendments] purport to deal with the question of whether a noncollusive, regularly conducted foreclosure sale should be deemed to be for a reasonably equivalent value.

Mr. DECONCINI. Than I am correct in concluding that parties in bankruptcy proceedings who seek avoidance of prepetition foreclosure sales would find no support for their arguments in these amendments?

Mr. DOLE. The Senator's conclusion is correct.

130 Cong.Rec. S.13771–S.13772 (No. 131, Pt. II, October 5, 1984). This exchange suggests that Congress did not attempt to establish what constitutes reasonably equivalent value when it adopted the 1984

amendments to the Bankruptcy Code. Thus, the legislative history is of little help in this matter. It demonstrates only that Congress intentionally chose not to address reasonable equivalency when it amended the Code.

Other courts dealing with this issue have reached a variety of results. One line of cases, beginning with *Durrett v. Washington Nat'l Ins. Co.*, 621 F.2d 201 (5th Cir. 1980), provides as a matter of federal bankruptcy law that a foreclosure sale occurring within one year prior to the bankruptcy is a transfer subject to avoidance as a fraudulent conveyance if the sale price is not a sufficiently high percentage of the fair market value of the property. In *Durrett*, the sale price was approximately 57% of the fair market value, and the court concluded that such a percentage was inadequate to withstand avoidance. The *Durrett* court noted that it could find no other decision approving a transfer of real property for less than 70% of the market value of the property. *See also Abramson v. Lakewood Bank and Trust*, 647 F.2d 547 (5th Cir.1981), *cert. denied*, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982) (approving *Durrett*'s adoption of a 70% standard for determining reasonable equivalency); *In re Richardson*, 23 B.R. 434 (D.Utah 1982) (reserving a ruling on whether a transfer for 21% of the equity is for reasonably equivalent value); *In re Perdido Bay Country Club Estates, Inc.*, 23 B.R. 36 (S.D.Fla.1982) (accepting *Durrett*'s holding that a transfer for 57.7% of the fair market value was not for a "fair equivalent"); *In re Coleman*, 21 B.R. 832 (S.D. Tex.1982) (transfer for 28% of the equity was not for reasonably equivalent value); *In re Smith*, 21 B.R. 345 (M.D.Fla.1982) (transfer for 12% of the equity was not for reasonably equivalent value); *In re Smith*, 24 B.R. 19 (W.D.N.C.1982) (transfer for 77% of fair market value was not avoidable); *In re Jones*, 20 B.R. 988 (E.D.Pa. 1982) (transfer for one-third to one-half of the market value is not for reasonably equivalent value); *Wickham v. United Am. Bank* (In re Thompson), 18 B.R. 67 (E.D.Tenn.1982) (transfer for 81% of the fair market value was not avoidable); *In re*

*Marshall*, 15 B.R. 738 (W.D.N.C.1981) (transfer for approximately 30% of fair market value was avoidable).

Another court effectively immunized a foreclosure sale from avoidance by concluding that the transfer effected by the foreclosure sale related back to the time of the original execution of the mortgage deed. Because that date was more than one year prior to bankruptcy, section 548 of the Bankruptcy Code did not apply and there was no need to even address reasonable equivalency. *See Alsop v. Alaska* (In re Alsop), 14 B.R. 982 (D.Alaska 1981), *aff'd*, 22 B.R. 1017 (1982).

A third approach was taken in *Matter of Winshall Settlor's Trust*, 758 F.2d 1136 (6th Cir.1985). There, the Sixth Circuit adopted the view that reasonable equivalence should be determined under the state law of fraudulent conveyances. Because, under Nevada and Michigan law, mere inadequacy of price did not justify setting aside a sale absent additional proof of fraud, unfairness, or oppression that accounts for the inadequate price, and because such additional proof was not made, the sale was not avoidable in bankruptcy.

Finally, in *In re Madrid*, 21 B.R. 424 (9th Cir.1982), the Ninth Circuit held that reasonably equivalent value for purposes of section 548(a)(2) means "the consideration received at a non-collusive and regularly conducted foreclosure sale." *Id.* at 427. In doing so, the court of appeals reversed a bankruptcy court holding that a nonjudicial foreclosure sale of a residence to a third-party purchaser could be avoided as a fraudulent conveyance under section 548(a)(2)(A).

The *Madrid* court criticized the *Durrett* decision because the *Durrett* court had relied upon cases involving voluntary, private transfers as the basis for its decision to set a foreclosure sale aside. *Id.* at 426. The *Madrid* court wrote:

> However valid it may be to hold that less than 70 percent of fair market value is not a fair equivalent for a private transfer to an insider, application of that standard to regularly conducted public sales is questionable.

We decline to follow *Durrett*'s 70% fair market value rule for the reason that a regularly conducted sale, open to all bidders and all creditors, is itself a safeguard against the evils of private transfers to relatives and favorites.

*Id.* at 426–27.

These conflicting approaches and decisions reflect the inherent tension between the state law surrounding foreclosure sales and the federal bankruptcy avoidance powers. Absent Supreme Court precedent, this court looks to Seventh Circuit decisions for guidance on such issues. In this instance, the Seventh Circuit has not addressed the issue of reasonable equivalence directly. However, it has written in a different context about the effect on title to property when bankruptcy intervenes following a foreclosure sale.

In *Matter of Tynan*, 773 F.2d 177 (7th Cir.1985), a sheriff's sale was held on September 20, 1983, pursuant to a judgment of foreclosure on property in Illinois. Under Illinois law, the defendants in the mortgage foreclosure proceedings could redeem the property within six months after the sale by paying the purchase price plus interest. One day before the redemption period expired, the defendants filed a petition in bankruptcy under chapter 13 of the Bankruptcy Code. They proposed a plan to redeem the property by refinancing their equity of redemption. *Id.* at 178.

Two days after the petition was filed, the sheriff issued a deed to the property to the purchaser at the foreclosure sale. The defendants-petitioners moved the bankruptcy court to expunge the deed, which motion the bankruptcy court granted pursuant to its decision to suspend the running of the statutory redemption period until the completion of the chapter 13 plan. *Id.*

The district court reversed the bankruptcy court, concluding that the bankruptcy judge did not have authority to extend the redemption period. The court held that under section 108(b) of the Bankruptcy Code, the trustee had to redeem the property, if at all within 60 days from the date the chapter 13 petition was filed. *Id.*

On appeal to the Seventh Circuit, the defendants-petitioners argued 1) that the redemption period should be tolled until the chapter 13 plan was completed, 2) that any application of section 108(b) should have been stayed pending disposition of the litigation, and 3) that, but for the pending litigation, the defendants-petitioners would have redeemed the property through their refinancing plan within the 60–day period. The Seventh Circuit rejected these arguments and affirmed the district court, stating that, "[i]f we were to adopt [the defendants'] their position, we would cloud every title secured through a foreclosure sale due to the possible filing of a voluntary petition in bankruptcy during the statutory redemption period." *Id.* at 179.

This statement, albeit in a context other than under section 548, requires this court to be alert to the interest in this circuit not to cloud titles to properties secured at foreclosure sales. Of course, if a debtor were allowed to avoid a foreclosure sale under a section 548(a)(2) fraudulent conveyance theory, then the *Tynan* court's admonition would go unheeded.

There are also two reported bankruptcy court decisions within this circuit directly addressing the reasonable equivalence issue. In *In re Ristich*, 57 B.R. 568 (N.D.Ill. 1986), the bankruptcy judge stated that a sale to a third party purchaser is presumptively for a reasonably equivalent value absent a showing of actual fraud or collusion recognized by Illinois law. *Id.* at 577.

Arguably, this result is not only consistent with the spirit of the Seventh Circuit's decision in *Tynan*, but it also protects the mortgage market, the debtor, and the purchaser. *Id.* at 577–78. It protects the mortgage market by not subjecting a mortgagee's interest to the risk of avoidance after a foreclosure sale, thereby allowing a mortgagee to loan money at a lower interest rate; it protects the debtor by allowing him to avoid foreclosure sales that were the result of collusive efforts to deprive him of his equity; and it protects the purchaser at the foreclosure sale by not subjecting him to the risk of avoidance for up to one year after the sale.

In *Matter of Berge,* 33 B.R. 642 (W.D. Wis.1983), the question before the bankruptcy court was slightly different: whether a judgment of strict foreclosure was a fraudulent conveyance that could be avoided under section 548. The court concluded that it was. In addressing reasonable equivalence, the court explained that, because a judgment of strict foreclosure under Wisconsin law automatically reverts title to the contract seller without a public sale, the interests of the general creditors to the bankruptcy estate were not afforded the protections of the market place. In addition, the court noted that value of the debt released by the foreclosure was less than seventy percent of the fair market value of the property; therefore, the *Durrett* standard was not satisfied and avoidance was appropriate on this basis also. *Id.* at 649–50.

The problem with the foregoing decisions in terms of resolving the issues in the case at bar is that the courts have not fully resolved the proper relationship between federal bankruptcy law and state foreclosure law, from which analysis the reasonable equivalency issue could be examined and made consonant with that analysis. The prior decisions have simply focused on the policies underlying either the state or the federal law, from which the courts drew the respective, corresponding conclusions.

To the extent a court was reluctant to upset the balance reached between lenders and borrowers under a given state's foreclosure law, that court concluded that a foreclosure sale must be conclusively presumed to have been for a reasonably equivalent value. That, of course, is the result Judge Bayt reached in the present case.

On the other hand, to the extent a court was more reluctant to diminish the ability of a trustee to protect creditors from *any* pre-petition transfer through the use of his avoidance powers, that court concluded that a foreclosure sale created, at best, a rebuttable presumption of reasonably equivalency. Exactly what showing was required to rebut the presumption has varied depending upon the fervency with which the court held the view that pre-petition transfers are fraudulent conveyances.

Fairly analyzed, the reasonable equivalency standard should be held to be irrebuttably satisfied where property is sold at a regularly conducted, non-collusive foreclosure sale to a third-party purchaser and where the deed to the property is executed and recorded before the debtor filed his bankruptcy petition. This result—the one reached in this case—properly prevents federal bankruptcy law from changing the rights of creditors in the realm of foreclosure sales because there is no policy underlying section 548 that overrides existing property interests under state law. In addition, it is limited by the requirement that the sale be to a third-party purchaser, thereby increasing the likelihood of competitive bidding at the sale so as to provide evidence that the statutory notice provisions have worked.

This result is bolstered by the recent work of a recognized scholar in the bankruptcy field. *See* T. Jackson, *The Logic and Limits of Bankruptcy Law* (1986). Professor Jackson has carefully analyzed the relationship between bankruptcy law and non-bankruptcy law, and the following analysis draws heavily upon his work.

Bankruptcy law serves as a collective debt-collection device. Contrary to creditor remedies outside of bankruptcy, where the creditor first staking a claim to the debtor's assets generally is entitled to be paid first out of those assets, bankruptcy law seeks to maximize the value of the debtor's assets to all of his creditors by preventing piecemeal dismantling of his business or personal assets by individual creditors.

However, bankruptcy law does not apply in all places at all times. Instead, it parallels the states' systems of individual debt-collection rules and is available to supplant them only when needed. The Supreme Court recognized as much in *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), when it wrote: "[T]he federal bankruptcy court should take whatever steps are necessary to ensure that the [secured creditor] is afforded in federal bankruptcy court the same protections he would have under state law if no bankruptcy had ensued." *Id.* 440 U.S. at 56, 99 S.Ct. at 918. The Court explained,

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."

*Id.* at 55, 99 S.Ct. 918.

Based on this reasoning, courts are admonished not to use section 548 of the Bankruptcy Code (or any other Code provision) to alter existing property interests under state law absent an overriding federal interest. In the present case, there is no such overriding interest.

Foreclosure under state law provides creditors with a means of recovering collateral that secures a loan that is in default. Statutory notice provisions regarding foreclosure sales protect the debtor and other creditors from a sacrifice of their interests in the property by informing the public of the nature and condition of the property to be sold, and of the time, place, and terms of the sale. These notice requirements help secure bidders for the sale in hopes of obtaining the maximum price for the property.

Similarly, federal fraudulent conveyance law is designed to protect creditors as a group against the misbehavior of their debtor. Transfers of property by a debtor to a friend or family member in an attempt to delay or avoid collection efforts by his creditors may be set aside so that the property may be used to satisfy the debts owed to those creditors.

In both state foreclosure law and federal fraudulent conveyance law, then, the policy of protecting creditors is a central purpose. And, because state law has established foreclosure sale procedures to protect creditors with interests in the property by maximizing the likelihood of competitive bidding at those sales, bankruptcy law (federal fraudulent conveyance law) should not intervene and change the rights of those creditors. There simply is no overriding policy underlying section 548 that is undermined by according a regularly conducted, non-collusive foreclosure sale an irrebuttable presumption of having been a sale for reasonably equivalent value.

One can argue that the policy of providing a debtor a fresh start in bankruptcy is not adequately served by this interpretation of section 548. However, the debtor is not entirely without protection. He may always protect his interest in the property from a low foreclosure sale price by filing for bankruptcy before the sale occurs. The automatic stay would then prevent the sale from occurring, absent approval from the bankruptcy court after a showing that the estate is afforded adequate protection.

The court's decision is limited, of course, to the specific factual context of this case, namely, a situation where the foreclosure sale was completed, where the purchaser at the sale was a third party and not a mortgagee to the property, and where the deed to the property was executed and recorded before the debtor filed his bankruptcy petition.

Three lawyers co-wrote an instructive article analyzing section 548 issues in which they explain the significance of a distinction drawn between a third-party purchaser and a mortgagee. *See* Alden, Gross, and Borowity, "Real Property Foreclosure as a Fraudulent Conveyance: Proposals for Solving the Durrett Problem," 38 Bus.Law. 1605 (1983). The authors explain that a third-party purchaser should be treated differently than a mortgagee because allowing avoidance of sales to third-party purchasers would effectively convert a real estate investment into a secured loan to a bankrupt debtor. Arguably, such a result will discourage third-party bidding at foreclosure sales. Moreover, if a third-party purchaser has resold the property to yet another third party before the section 548 avoidance, then the original purchaser could be required to reimburse the debtor for the difference between the value of the property (as determined by the court) and the amount of the bid at the sale, even though the original purchaser may not have received any profit above the price he

bid. *Id.* at 1618 n. 39 (citing *In re Coleman,* 21 B.R. 832 (S.D.Tex.1982)).

By contrast, subjecting a mortgagee who purchases property at a foreclosure sale to the risk of having the sale set aside under section 548 will not change the status of the mortgagee. The mortgagee was a secured creditor before the bankruptcy and would continue in that role throughout the bankruptcy.

This court agrees that the distinction drawn by the article's co-authors between third-party purchasers and mortgagees is a valid and useful one. Where a third party purchases the property at a foreclosure sale, there is evidence that the statutory notice provisions have worked; that is, they have produced competitive bidding. However, the court need not and, therefore, does not decide whether a foreclosure sale at which the mortgagee purchases the property may be avoided under section 548. The court decides only that a regularly conducted, non-collusive foreclosure sale of property to a third-party purchaser shall be irrebuttably presumed to have been for reasonably equivalent value.

For all of the foregoing reasons, the decision of the bankruptcy court denying the debtor's "Complaint to Set Aside and Vacate a Fraudulent Conveyance" is AFFIRMED.