974 F.2d 1144
 27 Collier Bankr.Cas.2d 1417, 23 Bankr.Ct.Dec. 705,
Bankr. L. Rep. P 74,837
 In re BFP, a Partnership, Debtor.
BFP, a Partnership, Plaintiff-Appellant,
v.
IMPERIAL SAVINGS & LOAN ASSOCIATION, Defendant,
and
Paul Osborne; William Little; Dennis Roy; Arthur Ritz;
Jose Cruz; Richard Marcz, Defendants-Appellees.
In re BFP, a Partnership, Debtor.
BFP, Appellant,
v.
IMPERIAL SAVINGS & LOAN ASSOCIATION, Appellee.
 Nos. 91-55632, 91-54480.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 9, 1992.
Decided Sept. 8, 1992.
 
 Roy B. Woolsey, Newport Beach, Cal., for plaintiff-appellant.
 Michael R. Sment, Rich & Ezer, Los Angeles, Cal., Robert F. Kidd, Graham & James, San Francisco, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel.
 Before: SNEED and D.W. NELSON, Circuit Judges, and ROLL*, District Judge.
 SNEED, Circuit Judge:
 
 
 1
 This is a consolidated appeal by BFP, a California partnership, from an adversary proceeding in the bankruptcy court instituted to avoid a transfer of property under the avoiding powers of 11 U.S.C. § 548(a)(2)(A). We affirm.I.
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 In July of 1987, Wayne and Marlene Pedersen and Russell Barton entered into a written arrangement involving the purchase of a home in Newport Beach, California owned by Sheldon and Ann Foreman. The Pedersens were to buy the Foreman home for $356,250 plus some rare coins, whose value is not disclosed in the pleadings. The Pedersens planned to raise the $356,250 from a bank loan, itself to be secured by a first deed of trust on the property. It is reasonable to assume that the Foremans believed their home had a value in excess of $356,250. The precise extent to which the Pedersens and Barton shared that view is less certain.
 
 
 3
 The Pedersens also agreed to give Barton a 180-day option to purchase the home, after the Pedersens themselves effected its purchase from the Foremans. Barton planned to remodel. In exchange for the option to buy, Barton agreed to pay the Pedersens 25% of any profits earned on the home's resale.
 
 
 4
 In August of 1987, after the property went into escrow, a shadow passed over the transaction. Local newspapers reported that Wayne Pedersen was under investigation for fraudulent sales of rare coins. This caused the Foremans some trepidation, and all the parties agreed orally to structure a somewhat different arrangement. Instead of the Pedersens being the buyers, a partnership, BFP, was formed. Its sole partners were Wayne and Marlene Pedersen and Russell Barton. Similar to the prior agreement between the Pedersens and Barton, the partnership agreed to divide profits from the resale of the Foreman home 75% to Barton and 25% to the Pedersens. The following transactions then took place.
 
 
 5
 On August 27, 1987, the Foremans deeded the property to the Pedersens. On the same day, the Pedersens then deeded the property over to BFP, the partnership. The Pedersens borrowed $356,250 from appellee Imperial Federal Savings Association[1] and BFP "borrowed" $200,000, in the form of a six-month promissory note, from the Foremans. Ostensibly, the note served as replacement value for the rare coins. Both loans were secured by deeds of trust on the home, Imperial's being a first, the Foremans' a second.
 
 
 6
 The Foremans' earlier misgivings proved well founded. Despite their initial conveyance to BFP, the Pedersens conveyed the property a second time to a concern called Off Road Vehicles--Recreation and Family Campground, Inc. BFP and the Foremans sued in state court to quiet title to the property.
 
 
 7
 While the state court suit was pending, Imperial, whose loan was not being serviced, instituted foreclosure proceedings on the property. Off Road then filed an involuntary bankruptcy petition on behalf of BFP in order to secure an automatic stay of the foreclosure. BFP moved to dismiss the involuntary petition, and Imperial moved to lift the automatic stay. The bankruptcy court granted both motions; it lifted the stay on June 12, 1989, and dismissed the involuntary case on June 14, 1989.
 
 
 8
 With the stay lifted, Imperial continued its foreclosure of the property. On July 12, 1989, Imperial conducted a foreclosure sale and sold the property to appellee Paul Osborne for $433,000. Osborne had no notice of the title dispute, and bought the property in good faith. BFP alleges that the property was actually worth over $725,000 at the time of the sale to Osborne. As a result, BFP claims that its equity in the property was lost.
 
 
 9
 On July 21, 1989, the state court in the suit to quiet title announced its intended ruling. The court decided to rescind the 1987 conveyance from the Foremans to the Pedersens and to award both the Foremans and Barton damages against the Pedersens. The court entered final judgment on October 12, 1989.
 
 
 10
 On August 18, 1989, after the state court announced its quiet title decision, BFP filed a second state court action which sought to rescind Imperial's conveyance to Osborne. The Foremans joined this action because, while their initial conveyance had been rescinded by the quiet title action, their ownership interest in the property stood to be destroyed by Osborne's good faith purchase of the property at Imperial's foreclosure sale. The stated grounds of this second state court action were that Imperial did not comply with the foreclosure procedures set forth in California Civil Code §§ 2924 et seq.
 
 
 11
 On October 25, 1989, BFP filed for Chapter 11 bankruptcy, which caused the second state court suit to be stayed. BFP then instituted the adversary proceeding that is the subject of this appeal.
 
 
 12
 The bankruptcy court on March 6, 1990 dashed BFP's and, no doubt, the Foremans' hopes when it dismissed the adversary complaint against Osborne for failure to state a claim. The court noted that BFP did not make any allegation that Imperial's trustee sale was in violation of California law, nor did BFP assert that the sale was conducted fraudulently or collusively. The court also found that Osborne was a bona fide purchaser for value, without notice, and ruled that there was no legal authority to set aside the sale as to Osborne. The district court summarily affirmed this dismissal, and BFP appealed on May 9, 1991.
 
 
 13
 The adversary proceeding continued to the summary judgment stage against Imperial and on July 10, 1990, the bankruptcy judge granted summary judgment in favor of Imperial. It based its decision on two grounds. First, it held that there was no transfer of an interest in property by virtue of the first state court judgment, which rescinded the deed from the Foremans to the Pedersens. Wrote the court: "[T]he Pedersons [sic ] did not have an interest in property when they purported to transfer the title to the property to BFP. Therefor [sic ], BFP never received good title." Alternatively, the bankruptcy court ruled that Imperial's sale to Osborne could not be avoided under 11 U.S.C. § 548(a)(2)(A) because "a reasonably equivalent value was received in exchange for the transfer, [and] the nonjudicial foreclosure sale was non-collusive and regularly conducted."
 
 
 14
 In a published opinion, In re BFP, 132 B.R. 748 (Bankr.9th Cir.1991), the bankruptcy appellate panel affirmed. The court applied its previous decision, In re Madrid, 21 B.R. 424 (Bankr.9th Cir.1982), aff'd on other grounds, 725 F.2d 1197 (9th Cir.), cert. denied, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984), which held that the sale price in a noncollusive, regularly conducted foreclosure sale is, as a matter of law, reasonably equivalent value for purposes of 11 U.S.C. § 548(a)(2)(A). Judge Volinn, who had dissented in Madrid, once more dissented. See In re BFP, 132 B.R. at 751-52 (Volinn, J., dissenting). This time he argued that Madrid should be overruled in light of more recent decisions from courts of appeals in other circuits, which themselves followed the suggested course of his earlier Madrid dissent. BFP appeals the bankruptcy appellate panel decision. We must now decide whether the bankruptcy court, the district court, and the bankruptcy appellate panel were correct in letting Imperial's foreclosure and Osborne's purchase of the Foreman home stand.
 
 II.
 JURISDICTION AND STANDARDS OF REVIEW
 
 15
 We have jurisdiction pursuant to 28 U.S.C. § 158(d).
 
 
 16
 The bankruptcy appellate panel's decision in the Imperial case and the district court's summary affirmance in the Osborne case are reviewed de novo. Findings of fact in the bankruptcy court are reviewed for clear error. We may affirm on any ground finding support in the record. See In re Siriani, 967 F.2d 302, 303-04 (9th Cir.1992).
 
 III.
 FRAUDULENT TRANSFERS UNDER SECTION 548(a)(2)
 
 17
 Section 548(a)(2) of the Bankruptcy Code sets forth the avoiding powers of a bankruptcy trustee as they relate to fraudulent transfers of a debtor's interest in property. To avoid a transfer under this section, four elements must be satisfied:
 
 
 18
 (1) the debtor must have an interest in the property;
 
 
 19
 (2) the debtor must have been insolvent at the time of the transfer or become insolvent as a result of the transfer;
 
 
 20
 (3) the transfer must have occurred within one year of the bankruptcy filing; and
 
 
 21
 (4) the debtor must have received "less than a reasonably equivalent value" for the transfer.
 
 
 22
 See In re Bundles, 856 F.2d 815, 816-17 (7th Cir.1988). Only the first and last elements are disputed on this appeal.
 
 
 23
 A. Did BFP have a property interest in the Foreman home?
 
 
 24
 Whether a debtor has a property interest under 11 U.S.C. § 548 is a question determined by state law. See In re Torrez, 63 B.R. 751, 754 (9th Cir. BAP 1986). As noted above, the bankruptcy court found that BFP did not obtain good title to the Foreman home by virtue of the state court ruling rescinding the deed from the Foremans to the Pedersens. Imperial contends that the bankruptcy court was correct, and offers a number of arguments in support of its position.[2]
 
 
 25
 Legal arguments aside, however, the judgment of the state court clearly quieted title in favor of both the Foremans and BFP as against all other parties in the state court action. After first rescinding the original deed from the Foremans to the Pedersens, the state court ruled as follows: "It is further ordered, adjudged and decreed that plaintiffs B.F.P., Sheldon L. Foreman and Ann Fant Foreman are the sole owners of said real property in fee simple, and Sheldon L. Foreman and Ann Fant Foreman are the owners of the note secured by deed of trust ... dated September 16, 1987 " (emphasis supplied). The September 16, 1987 deed of trust secures BFP's $200,000 note given to the Foremans. Thus, the state court judgment settled title in favor of the Foremans and BFP as co-owners in fee simple, and, in addition, validated the Foreman's second deed of trust against BFP's fee interest securing the $200,000 debt owed by the partnership to the Foremans.
 
 
 26
 Admittedly, the state court's reasoning is difficult to follow.[3] But the judgment is valid, and we must give it full faith and credit. It follows that BFP did indeed have a property interest in the Foreman home at the time of Imperial's foreclosure sale to Osborne.
 
 
 27
 B. Did BFP receive "reasonably equivalent value" under 11 U.S.C. § 548(a)(2)(A)?
 
 
 28
 The bankruptcy appellate panel below applied its earlier decision in Madrid and held that the price received at a noncollusive, regularly conducted foreclosure sale establishes as a matter of law reasonably equivalent value under 11 U.S.C. § 548(a)(2)(A). Although the issue is a close one, we agree that the Madrid rule is the appropriate interpretation of the Bankruptcy Code. As the Sixth Circuit has stated, "[T]he better view is that reasonable equivalence for the purposes of a foreclosure sale under § 548(a)(2)(A) should be consonant with the state law of fraudulent conveyances." In re Winshall Settlor's Trust, 758 F.2d 1136, 1139 (6th Cir.1985) (citing Madrid ). We necessarily part from the positions taken by the Fifth Circuit in Durrett v. Washington Nat'l Ins. Co., 621 F.2d 201 (5th Cir.1980)[4] and the Seventh Circuit in Bundles.[5]
 
 
 29
 The Bundles analysis (and implicitly that of the Durrett approach) rests on a plain-language interpretation of § 548(a)(2). Granting an irrebuttable presumption of reasonable equivalence under a noncollusive foreclosure sale, the Bundles court argues, effectively creates a judicial exception to the trustee's avoiding powers under § 548. Id. at 823. In turn, an irrebuttable presumption undermines the ability of the trustee or debtor to recover lost equity, which is the purpose of the § 548 avoiding powers. The position is persuasive, but we think that broader considerations require a different result.
 
 
 30
 As has been widely recognized, allowing a bankruptcy court to undo a foreclosure sale carries with it the strong potential to destabilize state mortgage transactions. Professor Ehrlich summarizes the result succinctly:
 
 
 31
 [T]he prospect that trial courts will determine reasonable equivalence on a case-by-case basis is untenable from both federal and state perspectives. From a state viewpoint, an ad hoc approach produces intolerable uncertainty regarding the finality of any purchase at a foreclosure sale even if the price paid at the sale is close to, but not equal to, the retail market value. From a federal perspective, this uncertainty undermines the price-maximizing objectives of section 548(a)(2) because potential buyers will discount their assessment of the true market value of the property to reflect this uncertainty.
 
 
 32
 Scott B. Ehrlich, Avoidance of Foreclosure Sales as Fraudulent Conveyances: Accommodating State and Federal Objectives, 71 Va.L.Rev. 933, 963-64 (1985). Professor Ehrlich's observations are persuasive. It makes little sense to interpret § 548(a)(2)(A) in a way that will likely discourage healthy foreclosure bidding.
 
 
 33
 Perhaps more importantly, by following the Madrid formulation we are able to give a reasonable meaning to § 548 without unduly upsetting local real estate markets or state law. Unlike the Bundles court, we see the issue as both one of statutory interpretation and the growing tension between preemption and the requirements of a vigorous federal system. The Supreme Court has recently reminded us that our interpretation of federal statutes should be tempered with due regard for traditional state areas of regulation. See Cipollone v. Liggett Group, Inc., --- U.S. ----, ---- - ----, 112 S.Ct. 2608, 2617-18, 120 L.Ed.2d 407 (1992). Thus, by interpreting § 548 in accordance with the Madrid formulation, we are able to balance bankruptcy policy and comity concerns.[6]
 
 
 34
 We therefore hold that the price received at a noncollusive, regularly conducted foreclosure sale establishes irrebuttably reasonably equivalent value under 11 U.S.C. § 548(a)(2)(A).[7]
 
 
 35
 AFFIRMED.
 
 
 
 *
 Honorable John M. Roll, United States District Judge for the District of Arizona, sitting by designation
 
 
 [1]
 Since the commencement of this suit, the Resolution Trust Corporation has been appointed receiver of Imperial. For convenience, we will continue to refer to the savings association by its former name
 
 
 [2]
 For instance, Imperial posits that BFP would be unable to obtain "bona fide purchaser" status from the Pedersen-to-BFP grant because the Pedersens were general partners of BFP. BFP, asserts Imperial, is therefore imputed with knowledge of the Pedersen's fraudulent intent by virtue of California partnership law, see Cal.Corp.Code § 15012, and the Pedersen-to-BFP deed is consequently avoidable to the same extent as the Foreman-to-Pedersen deed, see Perry v. O'Donnell, 749 F.2d 1346, 1349 (9th Cir.1984)
 
 
 [3]
 The state court seems to hold that the Foreman-to-Pedersen deed became avoidable by a failure of consideration caused by the Pedersens. However, the Foremans received over $365,000 of loan proceeds upon their transfer of title to the Pedersens. There is additional language in the judgment that implies that the failure of consideration took place as a result of the Pedersen's subsequent breach of both the BFP partnership agreement and contractual duties owed to the Foremans. How this breach would cause a failure of consideration, as that concept is normally understood, or how the breach would affect the original grant, is not explained
 Imperial describes the state court judgment as one which found fraud perpetrated by the Pedersens which in turn induced the Foremans to deed over their property. This is certainly a plausible reading of the facts, but it is just not supported by the state court judgment or its official "Explanation of Decision." Indeed, the state court flatly ruled that "there was no such conspiracy to defraud" on the part of the Pedersens.
 
 
 [4]
 The "Durrett rule" holds that so long as the debtor received at least 70% of fair market value, the sale cannot be avoided under § 548(a)(2)(A). As has been pointed out elsewhere, the actual holding of Durrett does not explicitly establish a 70% floor. Rather, the court merely noted that it was unable to find a case that had approved a transfer "for less than 70 percent of the market value of the property." 621 F.2d at 203. For analytical purposes, it is nonetheless useful to treat Durrett as standing for the notion that some level of price inadequacy will result in a fraudulent transfer under § 548(a)(2)(A). This is the interpretation given Durrett by numerous bankruptcy courts, and, historical accuracy aside, is in fact the "Durrett rule." See Alan S. Gover & Glenn D. West, The Texas Nonjudicial Foreclosure Process--A Proposal to Reconcile the Procedures Mandated by State Law with the Fraudulent Conveyance Principles of the Bankruptcy Code, 43 Sw.L.J. 1061, 1062 (1990)
 
 
 [5]
 The Bundles court rejected both Durrett and Madrid, opting instead for what it called a middle ground approach. Under the Bundles formulation, "[r]easonable equivalence should depend on all the facts of each case." 856 F.2d at 824. The court felt that the "starting point" of the inquiry should be the fair market value, but listed also as relevant the market value as affected by the "fact of foreclosure." In the "usual circumstances," the court opined, a rebuttable presumption of reasonable equivalence would be appropriate. Nonetheless, state-specific foreclosure procedures might alter the analysis if they were not designed to "return to the debtor-mortgagor his equity in the property." Id. Thus it is proper to examine state foreclosure procedures and inquire whether "there was a fair appraisal of the property, whether the property was advertised widely, and whether competitive bidding was encouraged." Id. Still, it is necessary "to accord respect to the state foreclosure sale proceedings." Id. at 825
 
 
 [6]
 We should note also that the Madrid formulation has been adopted by the National Conference of Commissioners on Uniform State Laws, see Unif. Fraudulent Transfer Act § 3(b) (1984), and has been recommended by the American Bar Association, see 1983 A.B.A. Sec. of Real Prop.Rep. 106B
 
 
 [7]
 We also agree with the lower courts that the applicable state procedures were complied with in this case and that BFP received adequate notice of the foreclosure under California law