**In re AFFORDABLE HOUSING DEVELOPMENT CORPORATION, Debtor.**

**C.F. BROOKSIDE, LTD., Appellant,**

v.

**SKYVIEW MEMORIAL LAWN CEMETERY; and United States Trustee, Appellees.**

**BAP No. CC–92–2150–HVJ.**
**Bankruptcy No. LA–82–19377–SB.**
**Adv. No. LA–89–1998–SB.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on May 19, 1994.

Decided Oct. 25, 1994.

Isaac M. Pachulski, Los Angeles, CA, for appellant.

Marc A. Beilinson, Santa Monica, CA, for appellees.

Before HAGAN, VOLINN and JONES, Bankruptcy Judges.

## OPINION

HAGAN, Bankruptcy Judge:

C.F. Brookside, Ltd. ("Brookside") appeals an order of the bankruptcy court reaffirming

its prior grant of summary judgment in favor of Skyview Memorial Lawn Cemetery ("Skyview"). We affirm in part and reverse and remand in part.

## I. Background

In 1979, Brookside sold an apartment project located in Redondo Beach, California (the "Project"), to Affordable Housing Corporation, the debtor-in-possession (the "Debtor") for cash and a $6.0 million dollar promissory note (the "Brookside Note") secured by a deed of trust (the "Trust Deed") on the Project. The Debtor subsequently converted the Project into condominiums.

On November 9, 1982, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Brookside and Skyview are both creditors in the chapter 11 proceeding.

In December of 1984, Brookside, the Debtor, and Robert A. Ferrante, a principal of the Debtor ("Ferrante"), entered into an "Agreement Regarding Modification of Note" which the parties refer to as the "CFB Agreement".[1] The CFB Agreement was conditioned upon approval by the bankruptcy court.

Pursuant to the CFB Agreement, Brookside permitted the Debtor to transfer ten Project units to Skyview. Seven of these units were to be transferred free and clear of the Trust Deed. The remaining three units[2], which are at issue here, were to be transferred "subject to the deed of trust." The CFB Agreement also permitted the Debtor to transfer five units to creditor Henry Walker ("Walker")[3], and eighty-five units to Ferrante[4], all subject to the Trust Deed. The CFB Agreement also provided that in the event the Debtor defaulted, Brookside would foreclose on the units owned by the Debtor and Ferrante before foreclosing on the units transferred to Skyview and Walker.[5] Brookside also agreed to subordinate its

---

1. Apparently, "CFB" is an abbreviation for C.F. Brookside Ltd.

2. These three units will hereinafter be referred to as the "Skyview units."

3. Hereinafter referred to as the "Walker units."

4. Hereinafter referred to as the "Ferrante units."

5. Sections 9 and 11 of the CFB Agreement Provide:

SECTION 9. *MODIFICATIONS OF BROOKSIDE TRUST DEED*

Trust Deed to a junior deed of trust securing a new loan of $4.9 million from Ferrante.

In March of 1985, the Debtor submitted a modification to its plan of reorganization. The bankruptcy court confirmed the modification (the "Plan") in April of 1985. The Plan designates Walker and Skyview as impaired creditors and provides that the Project units transferred to them pursuant to the CFB Agreement will constitute full satisfaction of their claims.[6]

The Plan lists Brookside under unimpaired creditors and provides:

> Brookside's claims shall be treated in accordance with the provisions of the CFB Agreement. This Plan shall not affect the rights, claims and remedies of Brookside except as to the extent provided for in the CFB Agreement.[7]

Concurrently with the sale of the Conveyed Units to Ferrante (the "Closing"), Affordable and Brookside shall execute, deliver and record the Trust Deed Modification, provided, however, that such Trust Deed Modification shall not result in an impairment in the priority of the Brookside Trust Deed except as expressly provided herein. Further, Brookside agrees that in the event it forecloses (whether by judicial foreclosure or power of sale) under the Brookside Trust Deed on account of Affordable's default under the Brookside Note or this Agreement, Brookside will foreclose upon the Walker and Cemetery [Skyview] Units only after foreclosing upon the balance of the units in the Project, including the Conveyed Units, subject to the Brookside Trust Deed, but only if the proceeds realized from such a foreclosure are insufficient to satisfy the Brookside Debt in full.

SECTION 11. *REAL ESTATE AUCTION*

In the event the Brookside Note is not paid in full on or before the Maturity Date, Affordable and Ferrante shall liquidate the remaining units in the Project, including the Conveyed Units, by way of a real estate auction so as to pay the Brookside Debt in full (the "Auction"). The terms of the Auction shall be reasonably satisfactory to Brookside and the Auction shall be scheduled within sixty (60) days after the Maturity Date. Affordable and Ferrante shall offer for sale at the Auction the following property in the order indicated: (i) First, any and all condominium units in the Project owned by Affordable; (ii) Second, any and all of the Conveyed Units owned by Ferrante; (iii) Third, any and all of the Notes; and (iv) Fourth, the Walker and Cemetery Units, but, if and only if the proceeds from the sale of the Notes and the condominium units owned by Affordable and

Following the Debtor's default, Brookside began foreclosure proceedings in 1987. Ferrante responded by threatening to file a chapter 11 petition. Negotiations ensued and in early 1988, the Debtor, Ferrante, and Brookside entered into an agreement entitled "Cooperation Agreement." Pursuant to the Cooperation Agreement, the Debtor and Ferrante agreed not to interfere with the foreclosure proceedings and Brookside agreed not to foreclose on the encumbered Skyview units until after the maturity date of the Note.

On June 14, 1988, prior to the maturity date of the note, Brookside exercised its power of sale on the non-Skyview units and purchased the units with a credit bid of approximately two million dollars. Brookside took the units subject to Ferrante's 4.9 million dollar lien. Following the fore-

Ferrante are insufficient to pay the Brookside Debt in full. Notwithstanding the foregoing, the Notes may be sold at a private sale, provided such sale is consummated prior to the Auction and the terms thereof are reasonably satisfactory to Brookside.

6. Sections 6.1, 6.1.a, and 6.2 of the Plan provide:

6.1 On the Effective Date of the Plan, or as soon thereafter as is practicable, the Debtor shall convey to claimant [Skyview] in full satisfaction of claimant's Class 6 claims, (i) those condominium units described on Exhibit "B" hereto, which conveyance shall be free and clear of the deed of trust of Brookside and (ii) those condominium units described on Exhibit "C" hereto which shall be subject to the deed of trust of Brookside.

6.1.a Pursuant to Section 7 of the CFB Agreement, while Skyview is owner of the units described on Exhibit "C" which are subject to the Brookside deed of trust, Skyview shall be entitled to receive and retain the rents, issues and profits therefrom, subject to the terms of the Brookside deed of trust.

6.2 On the Effective Date of the Plan, or as soon thereafter as is practicable, the Debtor shall convey to claimant [Walker] in full satisfaction of claimants's Clas [*sic.*] 7 claims, those condominium units described on Exhibit "D" hereto which units shall be subject to the outstanding deed of trust in favor of Brookside. While claimant is the owner of said units conveyed hereunder, claimant shall be entitled to receive and retain the rents, issues and profits therefrom, subject to the terms of the Brookside deed of trust.

7. CFB Agreement Section 5.6.

closure, the outstanding debt on the Brookside Note was approximately 2.6 million dollars.

Brookside refurbished the foreclosed units and sold them six months later at a profit. If such profit were applied to the Brookside Note, then the note would have been paid in full. If the profit is not applied to the Brookside Note, then Brookside has not yet been paid in full. Skyview contends that pursuant to CFB Agreement, the profit should be applied to the Brookside Note. Brookside disagrees.

On October 11, 1989, Skyview filed an adversary proceeding against Brookside seeking to prevent foreclosure of the encumbered Skyview units. Skyview contended that Brookside was not entitled to foreclose on any of the Project units until after the maturity date of the note and that Brookside was bound by the liquidation procedures set forth in Section 11 of the CFB Agreement. Skyview applied to the bankruptcy court for a temporary restraining order against Brookside's foreclosure on the Skyview units. The motion was denied and on November 13, 1998, Brookside completed the foreclosure.

After the foreclosure, Skyview filed a motion for partial summary judgment seeking determination of whether the fair market value of the Ferrante units should be considered in determining Brookside's outstanding debt. The bankruptcy court held that Brookside had no right to foreclose on the encumbered Skyview units and granted summary judgment in favor of Skyview. Shortly thereafter, the court entered a second order holding that Skyview was damaged in the amount of $689,392.32 (the fair market value of the Skyview units) by Brookside's wrongful foreclosure.

Brookside appealed and the Bankruptcy Appellate Panel reversed on the grounds Brookside had no notice that the bankruptcy court would consider and decide the issue of whether Brookside had a right to foreclose on the Skyview units.[8]

Following further proceedings, the bankruptcy court reaffirmed its prior summary judgment order in favor of Skyview. Brookside again appeals.

## II. The Bankruptcy Court's Decision

The bankruptcy court concluded that Skyview is entitled to prevail for three separate reasons. First, the CFB Agreement was incorporated in the Plan and therefore gave enforceable rights to all creditors including Skyview. The bankruptcy court then found that the foreclosure of the Ferrante and Walker units was premature under Section 11 of the CFB Agreement and consequently in violation of the Plan.

Next, the bankruptcy court found that by selling the Ferrante and Walker units as a block, Brookside violated California state foreclosure law. The court held that Brookside's violation of California law disqualified it from pursuing any further deficiencies against the Skyview units.

The court then held that the Bankruptcy Code required that Brookside sell the units in a commercially reasonable manner. The court concluded the sale of the Ferrante and Walker units was not conducted in a commercially reasonable manner because the properties were sold in a single block rather than one unit at a time and the sale was not adequately advertised.

Because it determined that Brookside did not have the right to foreclose on the Skyview units, the bankruptcy court awarded damages in the amount of the fair market value of the Skyview units.

## III. Summary Judgment Standard

 Review of a grant of summary judgment is *de novo*. *CHG Int'l, Inc. v. Barclays Bank (In re CHG Int'l, Inc.)*, 897 F.2d 1479, 1482 (9th Cir.1990); *In re Southland and Keystone*, 132 B.R. 632, 637 (9th Cir. BAP 1991). A reviewing court may affirm a grant of summary judgment only if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to the nonmoving party, that there are no genuine issues of material fact and that the moving party is entitled to prevail as a matter of law. *In re Pioneer*

---

**8.** *See C.F. Brookside, Ltd. v. Skyview Memorial Lawn Cemetery (In re Affordable Housing Development Corporation)*, BAP No. CC–91–1356–MeVPe, Memorandum dated April 28, 1992.

*Technology, Inc.,* 107 B.R. 698, 700 (9th Cir. BAP 1988). If the appellant is entitled to summary judgment, this Court may reverse the bankruptcy court and grant summary judgment in favor of the appellant. *See O'Neill v. Continental Airlines, Inc. (In re Continental Airlines, Inc.),* 981 F.2d 1450, 1458 (5th Cir.1993).

## IV. Analysis

### A. Violation of the Plan.

■ Like a consent decree, a chapter 11 plan has elements of both a judgment and a contract. Because of a plan's likeness to a consent decree, a chapter 11 plan should generally be interpreted as if it were a contract. *Hillis Motors, Inc. v. Hawaii Automobile Dealers' Ass'n,* 997 F.2d 581, 588 (9th Cir.1993) (citing *Official Creditors Committee of Stratford of Texas, Inc. v. Stratford of Texas, Inc. (In re Stratford of Texas, Inc.),* 635 F.2d 365, 368–69 (5th Cir. Unit A.1981)). The law of the state in which the plan was confirmed governs its interpretation. *Hillis Motors, Inc. v. Hawaii Automobile Dealers' Association,* 997 F.2d at 588 (citing *Kamen v. Kemper Financial Serv. Inc.,* 500 U.S. 90, 97–99, 111 S.Ct. 1711, 1717, 114 L.Ed.2d 152 (1991)); *In re Stratford,* 635 F.2d at 368–369.

■ The Plan depends on the CFB Agreement for its terms and implementation. The CFB Agreement is defined in Section 1.3 of the Plan. The Plan provides that Brookside's rights are limited by the CFB Agreement. The Plan also provides the Debtor will convey certain Project units to Skyview and Walker pursuant to the CFB Agreement. Because the conveyances to Skyview and Walker would otherwise violate the Trust Deed, the transfers to Skyview and Walker could not be completed without the CFB Agreement. The Plan's dependence on and numerous references to the CFB Agreement indicate the Plan was intended to incorporate the CFB Agreement.

Because the CFB Agreement is part of the Plan the creditors and the Debtor have the right to enforce the provisions of the CFB Agreement. *See* 11 U.S.C. § 1141(a).[9]

■ Nevertheless, Brookside contends that under California contract law, the Plan does not incorporate the CFB Agreement.[10] California law provides that one phrase of a contract should not be interpreted so as to render another phrase of the contract meaningless. *See Temex Energy, Inc. v. Hastie and Kirscher (In re Amarex, Inc.),* 96 B.R. 330, 332–33 (Bankr.W.D.Okla.1989) (construing Oklahoma state law); California Code § 1641 (West 1993).[11] Based on this prem-

**9.** 11 U.S.C. § 1141(a) provides:
Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

**10.** In the alternative Brookside contends that even if the CFB Agreement is part of the Plan, any amendment to the CFB Agreement is also part of the plan because the CFB Agreement provides for amendment. Section 15.4 of the CFB Agreement provides:
This Agreement or any provision of hereof may be changed, waived, or terminated only by a statement in writing signed by the party against which such change, waiver or termination is sought to be enforced.
The above provision may have allowed the Debtor, Ferrante, and Brookside to modify the

agreement before it became part of the Plan. However, once the agreement became part of the Plan it could no longer be amended by the parties without court approval.

Section 1127(b) limits the circumstances under which a confirmed plan may be modified. Section 1127(b) also limits the amendments which may be made to a confirmed plan. A bankruptcy court could not undercut the plain meaning section 1127(b) by confirming a plan which provided for amendment of the plan other than as provided by section 1127(b).

The CFB agreement provided for modification by the parties thereto. However, because the CFB Agreement was incorporated in the plan, to the extent the agreement affects the rights of other creditors, the CFB Agreement, like the plan, may not be modified except as provided in section 1127(b).

Here, the modification to the agreement entered into by Brookside affected the foreclosure rights of Skyview. Therefore the modification was made in violation of section 1127(b).

**11.** California Civil Code § 1641 provides:
"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably

ise, Brookside contends that if the Plan gave Skyview the right to enforce the CFB agreement, the Plan's statement in Section 6.1.a of the Plan provides that, "pursuant to Section 7 of the CFB Agreement" Skyview is the owner of the Skyview units would be meaningless.[12] However, the incorporation of the CFB Agreement does not render the phrase meaningless, but makes it clear that in describing what Skyview will receive, the Plan is merely paraphrasing the CFB Agreement and that the CFB Agreement itself, not the Plan's paraphrasing of it, will control what Skyview will receive.

■ We determine the CFB Agreement is part of the Plan and that Skyview has standing to enforce its rights thereunder. We now turn to and construe the CFB Agreement itself.

Section 9 states that "in the event Brookside forecloses (whether by judicial foreclosure or by power of sale)," Brookside will do so in a particular order. Section 11 states that in the event the Brookside Note is not paid by the maturity date, the Debtor and Ferrante will auction the remaining units in a manner "reasonably satisfactory to Brookside."

The bankruptcy court concluded the relationship between Sections 9 and 11 is ambiguous. It then held that because Brookside was at least in part a drafter of the CFB Agreement the ambiguity should be resolved against Brookside. Accordingly, the bankruptcy court held that Brookside was required to sell the units by the method stated in Section 11 and that Brookside was prohibited from selling the Skyview units before the maturity date of the Note.

An examination of the CFB Agreement demonstrates that Brookside was not bound by the provisions of Section 11. There is no ambiguity about the relationship between Section 9 and 11. Section 9 is clearly intended to limit the order in which Brookside may

foreclose upon the Project units in the event of a default. Section 11 provides that if Debtor defaults and Brookside does not foreclose before the maturity date of the Brookside Note, the Debtor and Ferrante will liquidate the collateral on behalf of Brookside. Section 11 is for the benefit of Brookside and does not limit Brookside's rights in any way.[13]

Brookside did not wait until the note matured to foreclose. Instead, it proceeded to foreclose immediately upon the Debtor's default. In so doing it was bound by the provisions of the Trust Deed as modified by Section 9 of the CFB Agreement. Because Brookside choose to foreclose immediately, the Debtor and Ferrante were not required to proceed under Section 11. Therefore, the timing and auction requirements of Section 11 are not relevant to the present action.

However, Brookside exercised its power of sale on all non-Skyview units (including the Walker units) at once. This action was clearly in violation of Section 9 which requires Brookside to foreclose on all other Project units before foreclosing on either the Walker units or the Skyview units. Thus, Brookside violated Section 9, but not Section 11 of the CFB Agreement.

■ In addition, Skyview contends Brookside misapplied the profits from the foreclosure. It asserts the phrase, "only if the proceeds realized from such a foreclosure are insufficient to satisfy the Brookside Debt in full,"[14] requires Brookside to apply the fair market value of the collateral and/or any profit realized by Brookside on the resale of the collateral to the Note before foreclosing on the encumbered Skyview units. However, the phrase does not suggest or imply anything about the fair market value of the property or any amount procured by the buyer upon resale. The phrase "proceeds from the sale" should be given its ordinary meaning, i.e., the net amount received from the sale of the collateral. What Brookside

---

practicable, each clause helping to interpret the other."

**12.** *See* footnote 6.

**13.** Skyview's interpretation of Sections 9 and 11 would require Brookside to postpone foreclosure

until after the maturity date of the note, regardless of when default occurred. The Panel finds it highly unlikely that any lender would agree to such a provision.

**14.** *See* Sections 9 and 11 of the CFB Agreement.

did with the collateral thereafter is irrelevant.

## B. California Foreclosure Law.

■ The bankruptcy court held that by foreclosing on the condominiums all at once rather than as individual units, Brookside violated California Civil Code § 2924g(b).

> *When the property consists of several known lots or parcels they shall be sold separately unless the deed of trust or mortgage provides otherwise.* When a portion of the property is claimed by a third person, who requires it to be sold separately, the portion subject to the claim may be thus sold. The trustor, if present at the sale, may also direct the order in which property shall be sold, when the property consists of several known lots or parcels which may be sold to advantage separately, and the trustee shall follow that direction. After sufficient property is sold to satisfy the indebtedness no more can be sold.

California Civil Code § 2924g(b) (West Supp. 1994) (emphasis added).

The Trust Deed provides that the trustee may upon default "sell the [encumbered property] at the time and place fixed by it in said notice of sale, *either as a whole or in separate parcels,* in such order as [the trustee may determine]." (emphasis added). Therefore, pursuant to the Trust Deed and the plain meaning of California Civil Code § 2924g(b), Brookside would have been entitled to sell all of the units as a whole. However, Section 9 of the CFB Agreement modifies Brookside's rights under the Trust Deed by requiring Brookside to sell all other project units *before* selling the Walker and Skyview units. By selling the Walker units together with the other non-Skyview units, Brookside breached the terms of the Trust Deed as modified by Section 9 of the CFB Agreement. Therefore, as Brookside neither sold the units separately nor as provided by the Trust Deed, *the sale of the units was in violation of California Civil Code § 2924g(b).*[15]

## C. Commercial Reasonableness.

■ The bankruptcy court held that where separate creditors have rights in the collateral, the sale of the collateral must be made in a commercially reasonable manner and if the sale is not conducted in a commercially reasonable manner no deficiency may be based upon the sale.

When considering prepetition foreclosures, several courts have held that the Bankruptcy Code imposes requirements for foreclosure beyond those imposed by state law. *General Industries, Inc. v. Shea (In re General Industries, Inc.),* 79 B.R. 124, 133–34 (Bankr. D.Mass.1987) (holding that a foreclosure in compliance with state law may nevertheless be a fraudulent transfer under 11 U.S.C. § 548 (fraudulent transfers) if the sale is not conducted in commercially reasonable manner); *Ruebeck v. Attleboro Savings Bank (In re Ruebeck),* 55 B.R. 163, 171 (Bankr.D.Mass. 1985) (holding that to avoid the application of 11 U.S.C. § 548 a creditor must obtain a presale appraisal, advertise in the real estate section of a newspaper, and give notice to local real estate brokers before the foreclosure sale).

However in, *BFP v. Imperial Savings & Loan Association,* 974 F.2d 1144, 1148 (9th Cir.1992), *aff'd,* —— U.S. ——, 113 S.Ct. 2411, 124 L.Ed.2d 635 (1994), the Ninth Circuit Court of Appeals considered whether 11

---

**15.** Skyview also contends that because Brookside sold the Walker and Ferrante units pursuant to a power of sale rather than a mortgage, California Civil Proc. § 580d (West 1993) prohibits Brookside from collecting a deficiency. California Civil Proc.Code § 580d provides in part:

> No judgment shall be rendered for any deficiency upon a note secured by a deed of trust ... in any case in which the real property or estate for years therein has been sold by mortgagee or trustee under a power of sale contained in the ... deed of trust.

The California courts have applied § 580d to the foreclosure of collateral pledged by a surety. *Union Bank v. Gradsky,* 265 Cal.App.2d 40, 43, 71 Cal.Rptr. 64 (1968). However, Skyview took the units subject to the Deed of Trust. Skyview did not pledge the units to secure the Debtor's obligations. Therefore, it is not likely that Skyview was acting as a surety for the Debtor. However, because Skyview has raised this argument for the first time on appeal, the Court will not determine this issue. *In re Herman,* 120 B.R. 127 (9th Cir. BAP 1990); *In re Perez,* 30 F.3d 1209, 1213, n. 4 (9th Cir.1994).

U.S.C. § 548 imposed a commercial reasonableness standard on state authorized foreclosure sales and declined to impose additional federal requirements. The *BFP* court based its decision on the plain language of § 548 and the need for "due regard for traditional state areas of regulation." *BFP*, 974 F.2d at 1148 (citing *Cipollone v. Liggett Group, Inc.,* — U.S. —, —, 112 S.Ct. 2608, 2617–18, 120 L.Ed.2d 407 (1992)); *see John Hancock Mutual Life Insurance Company v. Madera Farms Partnership (In re Madera Farms Partnership),* 66 B.R. 100 (9th Cir. BAP 1986) (because there was no evidence that the prepetition foreclosure sale was irregular or collusive, the amount bid by Hancock, not the fair market value of the property, should be credited against Hancock's claim); *see also Lawyer's Title Insurance Corp. v. Madrid (In re Madrid),* 21 B.R. 424 (9th Cir. BAP 1982) (holding that a non-collusive foreclosure held pursuant to state law should not be overturned in bankruptcy proceedings), *aff'd on other grounds,* 725 F.2d 1197 (9th Cir.1984).

The Supreme Court provided yet another reason for this rule in *Butner v. United States:*

> Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Manufacturers National Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 [ (1961) ]. The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests....

*Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (holding that a secured party's right to rents collected between the filing of bankruptcy and the foreclosure sale was a matter of state law.)

Although *BFP, Madrid,* and *Butner* did not involve a post-confirmation foreclosure, all four cases stand for the rule that state law, not federal rules of equity imposed by the bankruptcy court, govern the foreclosure of real property. In the present case, the appellee urges this panel to impose a federal commercial reasonableness standard to post confirmation foreclosures. That the present case arises after the chapter 11 plan was confirmed should not change the rule that state law applies. Brookside's property interest was created by state law prior to the bankruptcy proceeding. Like prepetition foreclosures, Brookside's foreclosure took place outside the immediate supervision of the bankruptcy court. There is no authority in the Code suggesting a new federal standard should be imposed. Further, the Supreme Court's fear of forum shopping and disparate results is particularly valid in situations where, as here, the dispute is subject to both state and federal subject matter jurisdiction. *See In re Balogun,* 56 B.R. 117, 119 (Bankr.M.D.Ala.1985) (holding that a confirmed plan may be enforced in state or federal court.) Accordingly, we conclude applicable state law, not federal principles of "commercial reasonableness," should govern the foreclosure or sale of collateral pursuant to a deed of trust executed pursuant to state law.

In addition to the Supreme Court's admonition to avoid implying federal preemption of state property laws, the Bankruptcy Code itself provides yet another reason why a bankruptcy court should not impose additional requirements on state foreclosure laws in the present case. Pursuant to the Plan, Brookside is an unimpaired secured creditor. Restrictions on or changes to a secured creditor's right to foreclose are an impairment. *L & J Anaheim Associates v. Kawasaki Leasing International, Inc. (In re L & J Anaheim Associates),* 995 F.2d 940, 943 (9th Cir.1993). Therefore, by requiring Brookside to comply with procedures beyond those provided by California state law, the bankruptcy court impaired Brookside's claim. The bankruptcy court may not impair Brookside's claim except through the formal process of post-confirmation modification. *See* 11 U.S.C. § 1127(b).

## V. Decision

The bankruptcy court erred in concluding that bankruptcy law requires a creditor to exercise its power of sale in a commercially reasonable manner.

While the bankruptcy court was correct in concluding that Brookside violated the provisions of the Plan and of California state law when it foreclosed, this conclusion was based on the erroneous premise that Section 11 of the CFB Agreement prohibited foreclosure of the Skyview units before the maturity date of the Note. Consequently, the bankruptcy court awarded Skyview damages in the amount of the fair market value of the Skyview units.

■ We conclude that Brookside violated Section 9 (not Section 11) of the CFB Agreement by foreclosing on both the Walker units and the Ferrante units at the same time. Brookside's simultaneous foreclosure of the Walker and Ferrante units may or may not have resulted in a lesser total net sales price. The difference, if any, between the net amount which would have been recovered if Brookside had complied with Section 9, and the amount Brookside actually recovered should be applied to the Brookside Note. If this additional amount is sufficient to cure the deficiency existing at the time of the foreclosure of the Skyview units, then Brookside's foreclosure of the Skyview units was wrongful and Skyview is entitled to damages in the amount of the fair market value of the foreclosed Skyview units.

If, on the other hand, the additional amount is insufficient to cure the deficiency, Skyview is entitled to the amount, if any, by which the net amount received by Brookside at the two foreclosure sales plus the amount applied to Note for violation of Section 9 exceeds the amount due on the Note at the time of the foreclosure of the Skyview units.

■ Skyview has the burden of proving that Brookside's failure to comply with Section 9 resulted in actual damages to Skyview.

Accordingly, the decision of the Bankruptcy Court is affirmed except for the Court's award of damages in the amount of $689,392.32 and is reversed and remanded to the bankruptcy court for determination of damages in accordance with this opinion.